Patrick G. McALINNEY, Appellant,

v.

MARION MERRELL DOW,
INC., Appellee.

No. 92–2259.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1993.

Decided May 10, 1993.

Dennis Egan, Kansas City, MO, argued (Richard E. Armitage, on the brief), for appellant.

Kevin R. Locke, Kansas City, MO, argued (Joseph A. Sherman and Ellen R. Klausen, on the brief), for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Patrick G. McAlinney appeals from the district court's [1] judgment in favor of Marion Merrell Dow, Inc. on McAlinney's claims for employment discrimination on the basis of national origin brought under Title VII and the Missouri Human Rights Act. We affirm.

## I.

McAlinney was born in Northern Ireland, where he attended medical school. In 1978, he immigrated to the United States. Licensed as a medical doctor in Missouri, McAlinney worked for a series of employers in the Kansas City area from 1978 until 1989.

Starting in 1983, McAlinney sought psychiatric and psychological counseling for job-related stress. From February 1983 to November 1983, he consulted with Dr. Ivor Jones, a psychiatrist. Dr. Jones prescribed chemical medications to McAlinney to alleviate both depression and anxiety. Dr. Jones also administered to McAlinney the Minnesota Multiphasic Personality Inventory (MMPI), a computer-scored diagnostic test. Starting in September 1988, McAlinney sought medical treatment from Dr. Ronald Johnson for depressive disorders.

In April 1986, McAlinney applied for a position with Marion Laboratories.[2] Marion's employment application contained an attached health questionnaire, which McAlinney signed and dated April 22, 1986. The

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

2. In 1989, Marion Laboratories merged with Merrell Dow to form Marion Merrell Dow, Inc. For convenience, the employer is referred to as "Marion" in this opinion.

questionnaire included the following question: "Have you been under a physician's care in the past three years?" McAlinney answered "No" to this question.

In May 1986, Marion hired McAlinney for the position of Associate Medical Director. McAlinney's job primarily entailed editing and approving Marion's advertising and promotional materials. He reported to Dr. Gerald Caldwell. McAlinney also worked with another Associate Medical Director, Dr. Michelle Flicker. In June 1987, Marion promoted Dr. Flicker, who became McAlinney's immediate supervisor and, as such, responsible for evaluating McAlinney's job performance.

Marion evaluates Associate Medical Directors annually by placing them in one of four categories: "O" for outstanding; "E" for exemplary; "G" for good; or "U" for unsatisfactory. Marion reviewed McAlinney three times. In his first review, he received a "G" rating, followed, respectively, by two "E" ratings in his second and third annuals reviews. Marion increased McAlinney's salary at least four percent following each annual review, to a total compensation package (salary plus bonus) of $119,800 in 1989.

Sometime in 1987, McAlinney decided that he was not receiving fair annual reviews from Marion. McAlinney concluded that this purported unfair treatment was the result of ethnic discrimination based upon his Irish ethnicity. Consequently, he began recording numerous conversations with particular Marion employees, primarily Dr. Flicker, employing a microcassette recorder hidden in one of his socks. In 1989, McAlinney also recorded a series of telephone calls at his home.

On May 17, 1989, McAlinney went on sick leave and ceased active employment with Marion. Shortly before electing to go on sick leave, McAlinney had sought employment with the Warner–Lambert Company, which offered him a position in May 1989. On May 18, 1989, McAlinney took a preplacement medical evaluation for Warner–Lambert. Warner–Lambert's evaluation contained a number of questions asking whether the applicant had ever been or was currently being treated for any health condition. McAlinney answered "No" to each of these questions.

In November 1989, Marion placed McAlinney on long-term disability. McAlinney at no time worked for Warner–Lambert.

In August 1990, McAlinney filed suit against Marion in Missouri state court. McAlinney's petition alleged four causes of action: (1) a violation of the Missouri Human Rights Act for discrimination based upon his national origin; (2) a violation of Title VII, 42 U.S.C. § 2000e et seq., for discrimination based upon his national origin; (3) the intentional infliction of emotional distress based upon workplace rumors that he had contracted AIDS; and (4) the negligent infliction of emotional distress based upon the same workplace rumors. Marion removed the action to the United States District Court for the Western District of Missouri.

Prior to trial, the district court dismissed both state law claims concerning emotional distress as pre-empted by the Missouri Workers' Compensation Act. The remaining claims were then tried, the Missouri Human Rights Act claim to the jury, and the Title VII claim to the court. The jury rendered a verdict in favor of Marion on the Missouri Human Rights Act claim. Shortly thereafter, the district court entered judgment on the jury verdict and also rendered judgment in favor of Marion on the Title VII claim.

## II.

McAlinney makes four arguments attacking the propriety of the district court's evidentiary rulings at trial. We note initially that "[w]e give substantial deference to the district court's rulings on the admissibility of evidence, and we will not find error in the absence of a clear showing of abuse of discretion." *Freidus v. First National Bank,* 928 F.2d 793, 794 (8th Cir.1991).

■ McAlinney first argues that the district court erred in refusing to permit him to offer tape recordings of conversations between McAlinney and various Marion management-level employees, particularly Dr. Flicker, during his case-in-chief.

As noted earlier, McAlinney had compiled numerous microcassette tapes of surrepti-

tiously recorded conversations, mostly between himself and Dr. Flicker, recorded at work and from his home telephone. McAlinney re-recorded selected portions of these microcassette tapes onto eight cassette tapes. McAlinney then submitted these eight cassette tapes, containing approximately nine hours of conversations, to the district court prior to trial. Marion subsequently filed a motion in limine to exclude the tapes from evidence. After listening to all of the tapes, the district court observed that many of the cassettes were inaudible and that some of the cassettes were fairly audible, but that the conversations on them were difficult to track. The district court determined that although some of the tapes were potentially relevant, they had foundational problems and might confuse or mislead the jury. Accordingly, it excluded the tapes from McAlinney's case-in-chief.

■ We set forth the requirements for introducing tape recordings into evidence in *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). In order to be admissible, the proponent must establish that (1) the recording device was capable of taking the conversation offered into evidence; (2) the operator of the device was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made; (5) the recording has been preserved in a manner that is shown to the court; (6) the speakers are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement. *Id.* We have also held that "[r]elevant evidence may nevertheless be excluded if its probative value is substantially outweighed by a danger of confusion of the issues or of undue delay." *Hogan v. American Telephone & Telegraph Co.*, 812 F.2d 409, 411 (8th Cir.1987); *see* Fed.R.Evid. 403.

A careful review of all nine hours of the tapes has confirmed the wisdom of the district court's decision to exclude them from McAlinney's case-in-chief. With the exception of three telephone conversations, only one of which is with Dr. Flicker, McAlinney recorded the balance of the conversations on a tiny microcassette recorder hidden in his sock. The resulting tapes are mostly garbled, often unintelligible, and suffer from an excess of background noise. Moreover, the tapes exhibit serious problems of continuity because, either through editing or recorder malfunction, there are numerous blank spots on each tape. Last, certain conversations appear twice on the tapes. Consequently, serious issues arise concerning whether changes, additions, or deletions have been made. *See McMillan*, 508 F.2d at 104. Indeed, McAlinney concedes that he edited the tapes. Moreover, McAlinney testified at great length concerning the statements allegedly made on the tapes. Accordingly, we find no error in the district court's refusal to permit McAlinney to use the tapes in his case-in-chief.

■ McAlinney next argues that the district court abused its discretion in refusing to let him introduce the tape recordings during his cross-examination of Dr. Flicker, either as the admissions of a party-opponent or as prior inconsistent statements. As we noted earlier, having painstakingly listened to all nine hours of the tapes, the district court noted its concerns about the quality of the tapes. In a conference with the parties on the first day of the trial, the district court ruled that playing the tapes would not be necessary if Dr. Flicker admitted all the statements on the tapes. Accordingly, the district court prohibited McAlinney from using the tapes during his cross-examination of Dr. Flicker unless she denied having made a particular statement. Dr. Flicker did not deny having made any of the statements attributed to her on cross-examination, and the tapes did not come into evidence.

We do not agree that the district court abused its discretion in refusing to allow counsel for McAlinney to impeach Dr. Flicker with the tapes. Although we held in *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir.1976), that "[a] statement's inconsistency ... is not limited to cases in which diametrically opposite assertions have been made," we recognize that "[t]he trial judge should have considerable discretion to determine whether evasive answers are inconsistent with positive assertions of an extrajudi-

cial nature previously given." *Id.* Although McAlinney argues that Dr. Flicker answered evasively and did not unequivocally admit to having made the statements, our review of the record shows otherwise. Dr. Flicker's purported evasiveness merely showed her understandable inability to recall specific phrases in conversations that had occurred between three and six years earlier. Because McAlinney had testified concerning the statements and Dr. Flicker did not deny having made them, counsel for McAlinney essentially contends that the jury needed to hear the statements three times. We cannot agree. Given its foundational concerns with the tapes, it was not an abuse of discretion for the district court to refuse to permit counsel for McAlinney to play the tapes unless Dr. Flicker denied having made a particular statement.

Likewise, McAlinney's argument that the district court had to admit the tapes as admissions of a party-opponent is without merit. Although Federal Rule of Evidence 801(d)(2) provides that such admissions are not hearsay, Rule 403 still permits the district court to exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See, e.g. Hogan,* 812 F.2d at 411. McAlinney had already testified concerning the statements on direct examination; Dr. Flicker did not deny having made the statements on cross-examination. Given the district court's foundational concerns about the tapes, it did not err in refusing to admit the tapes as admissions of a party-opponent.

Next, McAlinney argues that the district court abused its discretion by refusing to permit him to introduce evidence of rumors circulating in the workplace in 1989 that he had contracted AIDS. McAlinney argues that the district court should have admitted evidence concerning these rumors because they were "inextricably intertwined" with his evidence of ethnic discrimination.

This argument is without merit. McAlinney had originally advanced the rumor evidence to support Counts III and IV of his petition, the state law claims for intentional and negligent infliction of emotional distress. Three days before trial, the district court granted Marion's motion to dismiss both of these claims for lack of subject matter jurisdiction. In addition, the district court had required McAlinney to file a comprehensive statement entitled "Designation of Incidents of Discriminatory Treatment" before trial. McAlinney failed to make any mention of the AIDS rumors in this statement. Unsurprisingly, the district court thus did not credit McAlinney's argument that the AIDS rumor evidence was inextricably intertwined with his ethnic discrimination evidence. The AIDS rumor evidence only became so intertwined after the dismissal of the state law claims it supported. Accordingly, the district court did not abuse its discretion in refusing to admit evidence concerning health rumors circulating at Marion about McAlinney.

Last, McAlinney argues that the district court abused its discretion by permitting Marion to use medical records during its cross-examination of him. The disputed testimony concerns the medical records of Dr. Ivor Jones, who had treated McAlinney for psychiatric ailments in 1983, prior to his employment with Marion. Using Dr. Jones's records, Marion successfully established on cross-examination that McAlinney had falsely answered "No" to a question on his Marion job application concerning whether he had undergone any medical treatment within the last three years. Marion also demonstrated that McAlinney had falsely answered questions seeking information concerning medical treatment on his application to Warner–Lambert in 1989. Marion also cross-examined McAlinney concerning the results of the MMPI, eliciting an admission that the test had shown him to suffer from "paranoid ideation" and to be "extremely insecure."

After permitting the bulk of this cross-examination to occur, counsel for McAlinney objected on the grounds of hearsay and lack of foundation. The district court overruled the objection. McAlinney now argues that the MMPI evidence amounted to expert testimony that the district court should have excluded because Marion had not properly laid the foundation for admitting it. Marion

responds that the purpose of the cross-examination during which the records were used was to impeach McAlinney by showing he had lied on two employment applications regarding his psychiatric treatment, not to show that he was, in fact, paranoid or schizophrenic.

 Counsel for McAlinney waited to object until Marion had already asked three-quarters of the questions concerning his client's treatment with Dr. Jones. We have held that an objection is not timely where counsel makes the objection only after the witness has already answered several questions on the subject of the objection. *See Powell v. Burns,* 763 F.2d 337, 339 (8th Cir.1985). Moreover, where counsel fails to make a timely objection, we review the portion preceding the objection for plain error. *Id.* We find none here. "Under Fed. R.Civ.P. 61, the admission of improper evidence is harmless error when it does not affect the substantial rights of the complaining party." *Hannah v. City of Overland* 795 F.2d 1385, 1391 (8th Cir.1986). Our review of the trial transcript convinces us that any error in permitting the cross-examination to continue after the objection was harmless because McAlinney's own treating psychiatrist, Dr. Ronald Johnson, had earlier testified that McAlinney suffered from periodic bouts of paranoia. The bulk of the damaging testimony came in without objection, and we can discern no additional prejudice from testimony concerning Dr. Jones' records that occurred after the objection.

The judgment of the district court is affirmed.