**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bruce N. WILKINSON, Defendant–**
**Appellant.**

**Nos. 93–5757, 94–5896.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1994.

Decided May 12, 1995.

James Zerhusen, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Lexington, KY, Bruce E. Reinhart (argued), U.S. Dept. of Justice, Public Integrity Section, Washington, DC, Edwin J. Walbourn, III (briefed), Office of the U.S. Atty., Covington, KY, and Susan J. Park and Daniel P. Butler, U.S. Dept. of Justice, Crim. Div., Public Integrity Section, Washington, DC, for plaintiff-appellee.

Carter G. Phillips (argued and briefed) and Mark D. Hopson, Sidley & Austin, Washington, DC, and George Salem, Jr., and Frank E. Haddad, Jr., Louisville, KY, for defendant-appellant.

Before: WELLFORD, NELSON, and SILER, Circuit Judges.

SILER, Circuit Judge.

Defendant, Bruce N. Wilkinson, appeals the findings and conclusions of the district court upon remand from the decision of this court in *United States v. Wilkinson,* 26 F.3d 623 (6th Cir.1994). The issue on this appeal is whether the district court erred in making its findings on remand that the government had timely sealed the briefcase tape and gave a satisfactory explanation for the reason for the delay. Additionally, the questions which are duplications of the original issues on this appeal are whether the briefcase tape was sufficiently trustworthy to be presented as evidence to the jury and whether the court erred by allowing the jury to use transcripts when listening to the briefcase tape in court. For the reasons stated herein, we affirm the decision of the district court.

## I.

Wilkinson appeals his conviction under the Hobbs Act, 18 U.S.C. § 1951. While acting as the Director of Boards and Commissions for appointments by the Governor of Kentucky, he accepted a payment of $20,000 for a favorable decision by an arbitrator appointed by the Governor in a case in which Riverside Downs, a race track, wanted an allocation of intertrack wagering.[1] This is an appeal from the district court's additional findings and conclusions on remand regarding the surveillance tape or "briefcase tape."

## II.

The first question concerns whether the government timely sealed the briefcase tape or whether it gave a satisfactory explanation for the delay under 18 U.S.C. § 2518(8)(a).

 Section 2518(8)(a) provides in pertinent part that

immediately upon the expiration of the period of the order [authorizing the interception of wire or oral communications], or extensions therefore, such recordings shall be ... sealed.... The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence therefrom.

"Immediately" is understood as meaning "within one or two days." *United States v. Pedroni*, 958 F.2d 262, 265 (9th Cir.1992). Where a recording of an intercepted conversation is not sealed "immediately" upon expiration of the authorizing order, the "satisfactory explanation" language of § 2518(8)(a) requires that the government explain both the delay and why it is excusable, i.e., "satisfactory." *United States v. Ojeda Rios*, 495 U.S. 257, 265, 110 S.Ct. 1845, 1850, 109 L.Ed.2d 224 (1990).

The purpose of the sealing requirement is to help protect the authenticity and reliability of the tape recording and to limit "the Government's opportunity to alter the recordings." *Ojeda Rios*, 495 U.S. at 263, 110 S.Ct.

at 1849. The longer the delay before a tape is sealed, the greater the danger of adulteration. *United States v. Mora*, 821 F.2d 860, 868 (1st Cir.1987).

Additionally, § 2518(5) provides, in part, that no authorization order should allow interceptions to extend beyond the period necessary to achieve the order's objectives. Similarly, this authorization order also refers to termination of the order "upon attainment of the authorized objectives." The government contends that it had not attained its authorized objectives and therefore it had until fifteen days after the January 7 interception before the authorization order terminated.

 In reviewing a district court's ruling on a motion to suppress tapes obtained from electronic surveillance, this court reviews the district court's legal determinations de novo. *United States v. Carson*, 969 F.2d 1480, 1487 (3d Cir.1992). The district court's factual findings are reviewed for clear error. *Id.*

 The authorization order dated January 7, 1992:

provided that it would expire on the earliest of three dates: (1) the last date on which the government intercepted conversations with the briefcase recording device; (2) fifteen days measured from the first interception; or (3) twenty-five days from entry of the order. The order also stated that interception of oral communications must terminate upon the attainment of the authorized objectives, not to exceed fifteen days measured from the day on which the investigative law enforcement officers first began to conduct an interception of this order, or ten days after the order was entered, whichever was the earlier time.

*United States v. Wilkinson*, 26 F.3d 623, 626 (6th Cir.1994).

On remand, the district court found that as "all of the objectives of the interception order had not been attained within the fifteen-day period provided therein, the government timely sealed the tapes on January 23, 1992, in accordance with Judge Bertelsman's seal-

---

1. The underlying facts of this case are more particularly set forth in this court's opinion in

*United States v. Wilkinson*, 26 F.3d 623 (6th Cir.1994).

ing order of January 7, 1992." Given that the briefcase was only used to intercept communications on January 7 and the nature of the communications intercepted, we disagree with this conclusion, and find it was clearly erroneous inasmuch as the objective of the order had been achieved on January 7. Therefore, the recording should have been sealed on that date or shortly thereafter.

■ However, the government's delay in having the tape judicially sealed does not, alone, automatically warrant suppression. As previously noted, 18 U.S.C. § 2518(8)(a) provides the government an opportunity to offer a satisfactory explanation for the delay in sealing the tape. In *Ojeda Rios*, 495 U.S. at 266, 110 S.Ct. at 1851, the court recognized that a "good faith" misunderstanding of the relevant law constitutes a satisfactory explanation. Such misunderstanding must be objectively reasonable, and it must be the actual reason for the delay, meaning this court's review of a "good faith" explanation must be "based on the evidence presented and submissions made in the District Court." *Id.* at 267, 110 S.Ct. at 1851.

Because the district court, in denying Wilkinson's suppression motion, found that the briefcase tape had been sealed "immediately" upon expiration of the order, it did not address the question of whether the government had a satisfactory explanation for delay. However, upon remand, pursuant to this court's order, the district court conducted a lengthy evidentiary hearing in which the government explained its delay in sealing the briefcase tape.

At the hearing upon remand, the prosecuting attorney, E.J. Walbourne, testified that the government's interpretation of the authorization order was that it had fifteen days from the first interception in which to achieve its objectives. Walbourne testified, and the district court found his testimony to be credible, that he and Special Agent Christiansen and Assistant United States Attorney Steve Pence contemplated ways they could use the briefcase again in fulfilling the objectives of the interception order. The "good faith" nature of their misunderstanding of the order is further supported by the fact that the government sealed the briefcase tape on January 23, the sixteenth day after the first interception. Accordingly, the district court found the government's "good faith misunderstanding of the law" explanation for the delay satisfactory under *Ojeda Rios*.

Wilkinson contends that the government's explanation for the delay is new and different from previous explanations. However, a review of the record reveals that the government's response to Wilkinson's motion to suppress was based, from the outset, entirely on an understanding that the authorization order did not expire until fifteen days after the first interception. The government had simply not been given an opportunity to fully explain the delay prior to the hearing on remand because the district court had concluded that the tapes were timely sealed.

The import of protecting the integrity of a tape recording lies in avoiding any prejudice to the defendant. In the present case, no basis exists for inferring any prejudice to Wilkinson. There is no evidence of tampering, *United States v. Rodriguez*, 786 F.2d 472, 477 (2d Cir.1986), and there is no indication that the government's delay in sealing the tape was either a deliberate flouting of the statutory requirement or an effort to gain tactical advantage. *See United States v. Maldonado–Rivera*, 922 F.2d 934, 950 (2d Cir.1990), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991).

The district court's finding that the government provided a satisfactory explanation for the delay in having the tape sealed was not clearly erroneous.

### III.

The second question concerns Wilkinson's contention that the district court erred when it found the briefcase tape sufficiently trustworthy to be presented as evidence to the jury. Prior to trial, Wilkinson sought to exclude the briefcase tape, arguing that the tape was not sufficiently audible to remove speculation and surmise. The district court, after listening to the tape and finding that it met all the requirements for admission, denied Wilkinson's motion. This court, after review, instructed "the district court to set

out ... its version of the particular 'authentic, accurate and trustworthy' portions of the tape that deal with the vital meeting between Spurrier and the defendant on January 7, 1992." *Wilkinson,* 26 F.3d at 628.

■ The admission at trial of tape recordings rests within the sound discretion of the trial court. *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983) (*Robinson I*). "[A]s a prerequisite to admission, the tapes must be authentic, accurate and trustworthy," *id.* (citations omitted), and "they must be audible and sufficiently comprehensible for the jury to consider the contents." *Id.* (citations omitted). The fact that a tape recording has some unintelligible portions does not automatically render the entire recording inadmissible. *United States v. Robinson,* 763 F.2d 778, 781 (6th Cir.1985) (*Robinson II*). For the tape to be inadmissible, the incomprehensible portions must be so "substantial as to render the recordings as a whole untrustworthy." *Id.* (citations omitted). *Accord United States v. West,* 948 F.2d 1042, 1044 (6th Cir.1991), *cert. denied,* 502 U.S. 1109, 112 S.Ct. 1209, 117 L.Ed.2d 447 (1992).

■ On remand, the district court, pursuant to this court's instructions, found that although the briefcase tape contained unintelligible portions, one was able to discern:

(1) the sound of an out of breath person climbing several flights of stairs as described by Spurrier;

(2) Spurrier enter a room and state, "[h]ere's your twenty";

(3) Spurrier and another man counting stacks of "twenties," each of which contained twenty;

(4) the two men noting what they were counting has "something on it";

(5) Spurrier telling a telephone caller, a person later identified as McBee, that everything was fine and that someone had "[l]eft the case";

(6) Spurrier saying that he would take the money down to the curb;

(7) Spurrier leaving the room to go downstairs and "visit the basement";

(8) Spurrier returning to the room; and

(9) the two men leaving the room.

During the trial, the jury was permitted to listen to this tape, over Wilkinson's objection, using the sensitive infrared sound system. The court also listened to this tape using the same methodology and found it to be sufficiently trustworthy for the jury's consideration. On remand, the district court again listened to the tape using the same infrared sound system and found that its earlier conclusion was confirmed and that the tape was sufficiently trustworthy for the jury's consideration. This court, at Wilkinson's request, listened to the tape using the same type of infrared sound system. While the tape is not of the best quality and does have gaps and unintelligible portions, we were also able to discern those portions as enumerated by the district court in its opinion on remand. Therefore, we find that the district court did not abuse its discretion when it found the briefcase tape to be sufficiently trustworthy for submission to the jury under *Robinson II.*

Wilkinson also contends that the district court did not follow this court's directive in that it failed to "specifically" set out its version of the tape. This argument is without merit. While the district court did not set out its version in a "transcript-like" form, it did sufficiently and accurately enumerate those intelligible portions of the tape in a manner consistent with this court's directive.

## IV.

Wilkinson made a pretrial motion to prohibit the use at trial of a government-prepared transcript of the briefcase tape. The district court denied Wilkinson's motion and when Wilkinson renewed his objection at trial, the district court overruled his objection. On remand, Wilkinson again objected to the use of the transcript at trial. The district court, again, rejected Wilkinson's contention.

■ As with tape recordings of communications, the use of a transcript of a recorded communication during trial is within the sound discretion of the trial court. *West,* 948 F.2d at 1044; *United States v. Hughes,* 895 F.2d 1135, 1147 n. 22 (6th Cir. 1990); *Robinson I,* 707 F.2d at 876. The

concern is that, though the transcript is not admitted as evidence, where the tape contains significant inaudible portions, the jury's reliance on the transcript, in effect, transforms it into evidence. *Id.* at 878. Where a party seeks to use a transcript at trial, the ideal means of testing the transcript's accuracy is to have the parties stipulate to a transcript.[2] *Id.* However, if the parties dispute the contents of a tape, " 'the second best method is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes.' " *Id.* (quoting *United States v. Slade,* 627 F.2d 293, 302 (D.C.Cir.), *cert. denied sub nom. Johnson v. United States,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980)).[3]

As the parties did not agree on the language from the briefcase tape, no stipulated transcript was produced. Using the next best alternative for verifying the accuracy of the government's transcript, the district court "compared the tape to the Government's proposed transcript and found that the transcript 'fairly and accurately reflect[ed] the contents of the tape recording.' " The district court did not abuse its discretion in making this finding.

■ As noted by the district court, several additional factors reinforce the finding of accuracy of the government's transcript and eliminate the possibility of undue prejudice to the defendant. At the pretrial hearing on Wilkinson's motion to prohibit use of the transcript, Special Agent Whitworth of the FBI, who prepared the transcript, testified to the transcript's accuracy. *See West,* 948 F.2d at 1045 n. 1 ("Whenever transcripts are used, the person transcribing the tapes should testify concerning the accuracy of the transcripts and the method used in transcribing the tapes."). Furthermore, both the government and Wilkinson introduced testimony as to the tape recorded conversations: Wilkinson took the stand on his own behalf; Spurrier testified for the government, as did the agents involved in the interception. In this manner, the jury was able to compare the briefcase tape recording against the credibility of the various witnesses. *Robinson I,* 707 F.2d at 878. Finally, any potential prejudice stemming from the use of the transcript was also remedied by a cautionary jury instruction. *See Hughes,* 895 F.2d at 1147 n. 22. Therefore, we find that the district court did not abuse its discretion in allowing the use of the transcript at trial.

### V.

As to all other arguments advanced by Wilkinson, we find those to be without merit.

AFFIRMED.

---

**2.** In denying Wilkinson's pretrial motion to prohibit the use of the transcript, the district court suggested the possibility that the parties could stipulate to a transcript. However, as noted by the district court in its findings on remand, Wilkinson did not offer his own transcript. Rather, he had the official court reporter transcribe the tape while it was being played to the jury for the first time.

**3.** Some courts also recognize, as a third, and least preferred method, presenting the jury with two versions of the transcript. *See Slade,* 627 F.2d at 302. However, in *Robinson I,* this circuit found this approach prejudicial when the tape was significantly inaudible. 707 F.2d at 878.