UNITED STATES of America, Plaintiff,

v.

James WARDLAW and Eric Turpin, Defendants.

Criminal Action No. 1:97–CR–114MHS.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 22, 1997.

Larry Dean Thompson, Evans Greenwood Edwards, King & Spalding, Atlanta, GA, Charles W.B. Fels, Ritchie Fels & Dillard, Knoxville, TN (pro hac vice), for James Wardlaw.

W. Bruce Maloy, Bruce Maloy, Maloy & Jenkins, Atlanta, GA, for Eric Turpin.

### ORDER

SHOOB, Senior District Judge.

This action is before the Court on defendants' motions to suppress certain audio tape recordings; the Magistrate Judge's Report and Recommendation (R & R),[1] recommending that the motions be denied; and defendants' objections to the R & R. For the following reasons, the Court rejects the R & R and grants defendants' motions to suppress.

*Background*

Defendants seek to suppress tape recordings made by Jeffrey Wright, a former employee of Coca–Cola Enterprises, Inc. (CCE). In July 1994, during a union election campaign at CCE's East Metro Sales Center, where he worked, Wright began recording telephone conversations at his home on a cassette player attached to his telephone answering machine. Wright recorded telephone conversations between himself and defendant Eric Turpin, CCE's Atlanta Region Vice President, Human Resources, and Philip H. Sanford, CCE's Vice President, Finance and Administration. Wright also recorded answering machine messages left by defendant James Wardlaw, CCE's Atlanta Region Vice President and General Manager.

Wright did not preserve these original recordings. Instead, he selectively re-recorded the conversations on a dual cassette deck, deleting certain portions by pausing the duplicate tape so that it did not record the portions of the original that he wished to exclude. He then intentionally destroyed the original recordings by taping other material over them. According to Wright, the portions of the conversations he intentionally deleted consisted of "[r]acial remarks, girlfriend name, ... ask[ing] for a raise and ask[ing] for some Falcons tickets ... and [a] bunch of personal calls and curse words and stuff like that." (Transcript of July 9, 1997, hearing before the Magistrate Judge, at 113.) Wright claims that he did not intend to delete any of defendant Turpin's portions of the conversations but admits that he may have made mistakes during the re-recording process.

---

1. The Magistrate Judge issued an Order denying defendants' motions. However, since the Magistrate Judge is limited by statute to issuing an R & R on a motion to suppress evidence in a criminal case, 28 U.S.C. § 636(b)(1)(A), the Court will treat the Magistrate Judge's Order as an R & R and make a de novo determination of whether to exclude the challenged evidence.

In this manner, from four original cassette recordings, Wright created the two cassettes now identified as Government's Exhibits (GEX) 1 and 2.[2] A defense expert, Paul Ginsberg, examined these tapes and identified 28 "interruptions" caused by intentional "operator intervention." Of these 28 interruptions, 25 involved deletions of the recorded conversation of unknown duration. Ginsberg found no evidence that anything was added or spliced into any conversation, and he confirmed that the portions of the tapes preceding and following the interruptions are accurate reproductions of the originals.

*Discussion*

After a de novo review of the record, the Court concludes that the tape recordings are inadmissible for two reasons. First, the government cannot properly authenticate the recordings under Federal Rule of Evidence 901, because the evidence shows that the tapes have been materially altered. Second, under Federal Rule of Evidence 403, the probative value of the edited tape recordings is substantially outweighed by the danger of unfair prejudice to defendants and misleading the jury.

1. *Authenticity*

■ Authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). As applied to tape recordings, this means that the proponent must come forward with evidence showing, *inter alia,* "the absence of material deletions, additions, or alterations in the relevant portions of the recording." *United States v. Biggins,* 551 F.2d 64, 66 (5th Cir.1977).[3]

■ Furthermore, because "recorded evidence is likely to have a strong impression on a jury and is susceptible to alteration," the evidence of its authenticity and accuracy must be "clear and convincing." *United States v. Ruggiero,* 928 F.2d 1289, 1303 (2nd Cir.1991) (citations omitted); *see also United States v. Blakey,* 607 F.2d 779, 787 (7th Cir.1979). Thus, to establish authenticity, "the possibility of [material] alterations to the tape" must be eliminated "as a reasonable possibility." *United States v. Bright,* 630 F.2d 804, 819 (5th Cir.1980).

■ Applying these standards to the facts of this case, the Court concludes that the government, as the proponent of the tape recorded evidence, has failed to carry its burden of authentication. First, it is undisputed that the tapes offered by the government contain no fewer than 25 separate deletions from the, original recordings, which were intentionally destroyed. While the government contends, and the Magistrate Judge concluded, that these deletions were immaterial, the weight of the evidence is to the contrary.

Wright himself testified that he deleted his requests for a raise and for football tickets. These are both "thing[s] of value," 29 U.S.C. § 186(a), which, if given to an employee by management during a union election campaign, could constitute the same kind of alleged violation that led to the indictment in this case. Nonetheless, Wright has admitted to deleting these requests from his re-recordings, and it must be presumed that he also deleted defendant Turpin's responses in the process. Such requests and the missing responses are obviously material. The fact that Wright erroneously believed them to be immaterial also calls into serious question whether other deletions Wright made in the tapes were material.

That Wright's deletions were material is further indicated by other evidence. The tapes themselves reveal a critical deletion in the conversation in which defendant Turpin is explaining his understanding of his and defendant Wardlaw's alleged agreement with Wright. (*See* GEX 9A at 7059, line 10.) Just as defendant Turpin is about to tell

---

2. Two additional tapes, GEX 3 and 4, were delivered to the Government by Wright's attorney a year and a half after Wright turned over GEX 1 and 2. GEX 3 is a duplicate of GEX 1. GEX 4 appears to be an unaltered original tape of conversations irrelevant to these proceedings. Thus, GEX 1 and 2 are the only relevant tapes.

3. The proponent must also produce evidence of the competency of the operator, the fidelity of the recording equipment, and the identification of the relevant speakers. *Id.* None of these requirements are at issue in this case.

Wright what he has agreed to do, Turpin's statement is edited in mid-sentence. When the conversation resumes, it has moved on to another topic. ·Clearly, defendant Turpin's understanding of the alleged agreement that led to the indictment in this case is material. The government contends that this gap in the tape was not due to Wright's editing but to a break in the cellular phone transmission. This contention, however, is purely speculative and in any event does not change the apparent materiality of the omitted portion of the conversation.

Wright's claims that he deleted only immaterial portions of the tapes are further undermined by his own lack of credibility and by other evidence from the tapes themselves. The evidence shows that Wright has repeatedly misrepresented the nature of his recordings. When he initially turned over GEX 1 and 2 to the government, he falsely stated that the tapes were originals. He later repeated this misrepresentation to the grand jury. Only after being confronted by government agents with information that showed the tapes could not possibly be originals did Wright explain his editing process. Wright lied again when he told the government that he had not made any other tapes. To the contrary, as he later testified, he had made an additional tape for Summerfield Johnston, CCE's Chief Executive Officer, which Wright later destroyed, and he made yet another unedited duplicate tape of some of his conversations with defendant Turpin for his friend Roger Snipes to hold, which Snipes later smashed and burned at Wright's request. There is no explanation of why Wright wanted these other tapes destroyed.

The tapes themselves suggest that, contrary to Wright's claim that he deleted only his own comments, as many as half of the 28 "interruptions" in the re-recordings were intentional deletions of comments by defendant Turpin. At the very least, there are four clear instances where Wright edited remarks by defendant Turpin. (*See* GEX 9 at 7059, 7120, 7123, and 7149.) There is no evidence as to the length of these deletions and no way to determine whether they were material other than to accept the word of Wright.

Wright's motivations in making the re-recordings are also suspect. Wright testified that from the outset, his intent in making the recordings was to use the tapes to challenge the union election. However, it appears that Wright may have also been motivated by a desire to avoid prosecution for his own attempts at extortion. In a series of meetings with CCE executives Philip Sanford and Jarratt Jones, occurring in late December 1994, and early January 1995, Wright told Sanford and Jones that he had "three full tapes" of recorded conversations between himself and Turpin and Wardlaw. Even though Sanford assured Wright that CCE would not retaliate against him if he would assist in an investigation of Turpin and Wardlaw, Wright refused to give Sanford copies of his tapes. During their final meeting on January 5, 1995, Wright made several comments that led Sanford to believe Wright was attempting to extort CCE. Sanford made his suspicions known to Wright in a letter the next day terminating Wright's employment with CCE. Wright has acknowledged that he did not create GEX 1 and 2 until some time after his initial meeting with Sanford and Jones. Thus, it appears that Wright did not decide to create GEX 1 and 2 and to destroy the original tapes until after being informed of the criminal nature of his own extortion attempts and the possibility that he himself had violated NLRB rules.

Finally, none of the cases relied on by the government and the Magistrate Judge involved tape recordings that had been deliberately altered. *See, e.g., United States v. Nicoll,* 664 F.2d 1308, *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982) (upholding admission of tape with one-minute gap caused by turning tape over to record on other side); *United States v. Lively,* 803 F.2d 1124 (11th Cir.1986) (allowing tape containing inadvertent seven-second gap); *Addison v. United States,* 317 F.2d 808 (5th Cir.1963), *cert. denied,* 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964) (upholding admissibility of recording that was partially inaudible); *United States v. Wilkinson,* 53 F.3d 757 (6th Cir.1995) (same). Indeed, the absence of any evidence of tampering has often been a critical factor in decisions allowing tapes into evidence. *See e.g., Nicoll,* 664 F.2d at 1314

("no one had tampered with the recording or deleted any portions of it"); *Wilkinson,* 53 F.3d at 760 ("no evidence of tampering"); *see also United States v. Albert,* 595 F.2d 283, 290 n. 14 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979) (noting factors to be considered in determining admissibility of tape include "the likelihood of others tampering with it").

In summary, Wright's deliberate editing of the recordings, viewed in the context of his questionable motives, his intentional destruction of originals and other re-recordings, and his pattern of deception with the government, the grand jury, and the Court, establish a high probability that his deletions were material. If this were not enough, Wright's own testimony about deleting portions of the tapes where he asked for a raise and for football tickets, and the tapes themselves, which show that Wright repeatedly deleted defendant Turpin's own statements, establish beyond any reasonable doubt that the tapes have been materially altered. Consequently, they are inadmissible under Rule 901.

### 2. *Unfair prejudice*

■ In light of Wright's intentional editing of the tape recordings, the Court also concludes that any probative value they might have is far outweighed by their potential to unfairly prejudice the defendants and to mislead the jury. Other courts have recognized the danger of prejudice inherent in the use of audio recordings. *See, e.g., United States v. Frazier,* 479 F.2d 983, 985 (2nd Cir.1973) ("the danger of unreliability of a partly inaudible recording is exacerbated by the substantial impact it may have on a jury"). Thus, in *McAlinney v. Marion Merrell Dow, Inc.,* 992 F.2d 839, 842 (8th Cir. 1993), the court relied on Federal Rule of Evidence 403, as well as Rule 901, to hold inadmissible audio tapes that had been surreptitiously recorded and then re-recorded and edited by an employee bringing a discrimination suit.

Similarly, in this case, any probative value of the tapes offered by the government is substantially outweighed by the inherent danger of unfair prejudice that arises when audio recordings have been purposefully altered to reflect an inaccurate rendition of the original conversations. This unfair prejudice is not overcome by the fact that Wright will be available for cross-examination at trial or that Turpin, one of the participants in the conversations, can "fill in the gaps" created by Wright's deletions. Cross-examination of Wright cannot cure the substantial impact that hearing the recordings would likely have on the jury. Nor can Turpin's necessarily imperfect recollections of conversations that occurred more than three years ago match the impact and persuasiveness of hearing actual recordings of the selected portions of the conversations that Wright chose to preserve. As for defendant Wardlaw, since he was not a party to any of the conversations, he could not respond in any meaningful way to the playing of the edited tapes.

Accordingly, in addition to the government's failure to authenticate the tapes under Rule 901, the tapes must also be excluded under Rule 403 because their probative value is outweighed by the risk of unfair prejudice and misleading the jury.

### *Summary*

For the foregoing reasons, the Court REJECTS the Magistrate Judge's R & R [# 98–1], GRANTS defendant Wardlaw's motion in limine to exclude excerpts of recorded phone conversations [# 16–1], and GRANTS defendant Turpin's motion to suppress audio tapes [# 33–1].