**UNITED STATES of America,
Plaintiff,**

v.

**D–2 Deshawn SIMS, a/k/a
"Shaq", Defendant.**

No. 99–80102–02.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 31, 2000.

---

Margaret A. Davis, Asst. U.S. Attorney, Detroit, MI, for Plaintiff.

Marvin Barnett, Detroit, MI, for Defendant.

## Opinion and Order

FEIKENS, District Judge.

### I. Introduction

On March 24, 2000, a jury convicted defendant Deshawn Sims on two counts of possession of drugs with the intent to distribute, Counts I and II, and two counts of aiding and abetting in the possession of drugs with intent to distribute them, Counts III & IV. In separate motions, Sims now moves to invalidate these convictions.

### II. The Counts

The jury found Sims guilty of Count I, possession of one kilogram of cocaine on February 25, 1997. A confidential informant (CI) bought this kilo from Sims at the direction of agents from the Drug Enforcement Administration (DEA), i.e., a controlled buy. The DEA recorded the conversation between the CI and Sims to arrange this buy. The tape was introduced into evidence as Exhibit 20.

The other counts resulted from search warrants that the DEA executed on March 11, 1997, the first on a house on Hawthorne Street in Detroit which was immediately followed by a raid on a house on Atkinson Street in Detroit. The jury found Sims guilty of Count II, possession of one kilogram of cocaine on March 11, 1997. A DEA agent found this kilogram in a car parked in the driveway at a house on Hawthorne Street. The DEA had a warrant to search the house. DEA agents impounded and searched the car after a drug-detecting dog alerted them to the possible presence of drugs in the car.

The jury found Sims guilty of Count III, aiding and abetting Sonya Thomas in the possession with the intent to distribute of two kilograms of cocaine on March 11, 1997, and Count IV, aiding and abetting Sonya Thomas in the possession with the intent to distribute of 350 grams of cocaine base, a/k/a "crack cocaine", also on March 11. The DEA found this cocaine and cocaine base in a backpack that Sonya Thomas took from a house on Atkinson Street into a car minutes earlier. Thomas stated that Sims called her and told her to take the cocaine and cocaine base out of a stove in the Atkinson Street house and put them in the backpack. Sims made this phone call to Thomas at the Atkinson Street house at about the same time that the DEA was executing the search warrant on the Hawthorne Street house. As Thomas was backing the car out of the driveway of the house on Atkinson Street, DEA agents stopped her.

### III. Motion to Invalidate Counts I & II.

Sims argues for a vacation of his convictions on Counts I and II because of improper admission of tapes and transcripts; because of my reserving a ruling on the defendant's Rule 29 motion; and because of a variance from the superseding indictment.

#### A. Tapes and Transcripts

■ Sims argues that it was improper for the jury to use transcripts of audio tapes submitted as evidence. The government submitted three tapes into evidence: Exhibit 20, a tape of the February 25, 1997, phone call between the CI and Sims; Exhibit 22, a tape of a March 7, 1997, conversation between the CI and Sims; and Exhibit 24, a tape of a March 11, 1997, conversation between the CI and Sims. The government made transcripts of each tape.

The use of a transcript of taped recordings is permissible as an aid to the jury . . . when certain procedures are followed. . . . The next best alternative [to stipulation of the transcripts] is for the transcriber to attest to its accuracy, outside of the jury's presence, by reading the transcripts while listening to the tapes.

*U.S. v. Segines,* 17 F.3d 847, 855 (6th Cir.1994). "[W]henever a transcript is used and there is no stipulation as to its accuracy, . . . a cautionary instruction to the jury [is required] regarding the limited use to be made of the transcript." *Id.*

In this case, since there was no stipulation as to the three transcripts, I read the transcripts while listening to the tapes. I found the transcripts to be accurate and trustworthy. Other than the identity of an unknown person's voice, the defendant did not object to the accuracy of the transcripts used. Although the tapes contained background noise and a few words were difficult to understand, these minor imperfections did not render the tape recordings untrustworthy. *See U.S. v. Wilkinson,* 53 F.3d 757, 761 (6th Cir.1995).

Before and after playing the tapes for the jury, I cautioned them that the tapes, not the transcripts, were the evidence. Trial Transcript (TT) IV–49, 54. In describing the procedures for the jury to examine evidence as they deliberated, I again cautioned that the transcripts are not the evidence, the tapes are. TT VI–124.

Because of these procedures, the use of the transcripts and tapes at trial was proper. *See U.S. v. Wilkinson,* 53 F.3d at 761.

### B. Authentication and Admission of the Tapes

■ Sims also argues that his voice on the tapes was not properly authenticated, and, since the tapes purported to be conversations involving Sims, the tapes were inadmissible. Federal Rule of Evidence 901(a) requires "authentication or identifi-cation as a condition precedent to admissibility." Fed.R.Evid. 901(a). A witness may authenticate a voice "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed.R.Evid. 901(b)(5).

Here, DEA Agent Daniel Krause testified that he became familiar with Sims' voice when Sims was processed at DEA headquarters and later heard what he called Sims' "distinctive" voice on the tapes. TT II–34, 105–111. This testimony sufficed to authenticate Sims' voice on the tapes.

■ Sims also argues that the tapes contained inadmissible hearsay because he had no ability to cross-examine the other speakers on the tape. Of course, Sims' taped statements, as party admissions, were not hearsay. *See* Fed.R.Evid. 801(d)(2)(A). The CI's taped statements—the CI died before trial—were not hearsay because they provided context to Sims' statements and were not offered to prove the truth of the matter asserted. *See* Fed. R.Evid. 801(c); *U.S. v. Murray,* 618 F.2d 892, 900 (2nd Cir.1980).

### C. Rule 29

■ At the close of the case, Sims moved to dismiss Counts III and IV. I reserved my ruling on the motion and submitted both counts to the jury because I could revisit the issue if the jury returned a guilty verdict on both counts. Sims argues that, if Counts III and IV were not supported by the evidence, the jury's consideration of those two counts would prejudice them in their consideration of Counts I & II. Since, as outlined below, I hold that Sims should not be acquitted on Counts III and IV, their presence did not prejudice the jury in determining Counts I and II. Further, the option of reserving a ruling on a motion for a judgment of acquittal is an option explicitly provided for in Rule 29(b). *See* Fed. R.Crim.Pro. 29(b).

## IV. Motion for Judgment of Acquittal on Counts III & IV

### A. Instructions

■ The defendant argues that the jury instructions constituted a constructive amendment of Counts III and IV of the indictment because the instructions as to Counts III and IV only related to the defendant while the indictment charged both the defendant and Sonya Thomas. Thomas, who also testified for the government, pleaded guilty pursuant to a plea agreement to the use of the phone in commission of a drug trafficking offense, 21 U.S.C. § 843(b), and was not put on trial. What the defendant describes as prejudicial variance is only a useful clarification. Sims faced the same charge whether or not Thomas was on trial with him. Here, the jury did not need to be instructed as to Thomas as she was not on trial.

### B. Sufficiency of the Evidence

■ The defendant argues that the government did not present sufficient evidence to support a conviction under Counts III and IV. Count III charged:

That on or about March 11, 1997, ... SONYA THOMAS and DESHAWN SIMS, defendants herein, did knowingly, intentionally aid and abet each other in knowingly and intentionally, and unlawfully, possessing with the intent to distribute a controlled substance, to wit: approximately two kilograms of cocaine, a Schedule II Controlled Substance, contrary to the provisions of Section 841(a)(1), Title 21, United States Code and Section 2, Title 18 United States Code.

Count IV read exactly the same except that it involved 350 grams of cocaine base, instead of cocaine. The cocaine and cocaine base referred to in the Counts III and IV were the drugs that Thomas took out of the stove and put in the backpack at the Atkinson Street house.

There was sufficient evidence to show that Sims was guilty of Counts III and IV either as a principal or as an aider and abettor. The aiding and abetting statute reads: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

In her statement to the DEA and in her testimony, Thomas stated that Sims ordered her by phone to take the "stuff"— the cocaine and cocaine base—out of the stove and put it into the backpack. Exh. 19A and TT IV 124-6. In a plea agreement introduced into evidence, Exh. 26, Thomas pleaded guilty to the use of the phone in commission of a drug trafficking offense, 21 U.S.C. § 843(b). Sims' call to Thomas indicated his participation, and his intent to participate, in the drug trafficking crime to which Thomas pleaded guilty. Thus, he is guilty to aiding and abetting Thomas.

There was also enough evidence to show that Sims was guilty on Counts III and IV as a principal. Sims' call to Thomas to order her to take the drugs out of the stove and put them into the backpack and her subsequent following of this order indicated Sims' control over the drugs and his constructive possession of the drugs. The quantity of the drugs, two kilograms of cocaine and 350 grams of cocaine base, indicated Sims' intent to distribute the drugs. See U.S. v. Dotson, 871 F.2d 1318, 1323 (6th Cir.1989). As such, Sims is guilty as a principal of possession with intent to distribute the cocaine and the cocaine base as set out in Counts III and IV. See U.S. v. Mullins, 22 F.3d 1365, 1368 (6th Cir.1994) ("[T]he government may always prove the defendant is guilty as a principal, even where the indictment charges only that he acted as an accessory.").

## V. Conclusion

For the foregoing reasons, I DENY Sims' motion to vacate his conviction on Counts I and II and his motion for a new trial on Counts III and IV, and I DENY

his motion for judgment of acquittal on Counts III and IV.

IT IS SO ORDERED.