UNITED STATES of America, Plaintiff–Appellee,

v.

Raymond WEST, Defendant–Appellant.

No. 91–5097.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 3, 1991.

Decided Nov. 15, 1991.

Timothy R. DiScenza, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Kathleen L. Caldwell (briefed), Memphis, Tenn., for defendant-appellant.

Before MARTIN and MILBURN, Circuit Judges, and ROSEN, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge.

On appeal, Raymond West challenges his convictions for (1) conspiracy to possess with intent to distribute and to distribute cocaine, and (2) false testimony before a federal grand jury. West claims that the

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michi- gan, sitting by designation.

district court committed reversible error in allowing the jury to use transcripts of taped conversations because the government offered no testimony to prove the accuracy of the transcripts. West also claims that the district court committed reversible error in imposing a sentence under the Sentencing Guidelines based, in part, on an amount of cocaine for which there was no factual basis. For the following reasons, we affirm the decision of the district court.

A federal grand jury charged West in a multi-count, multiple-defendant indictment related to a long-term and wide-ranging conspiracy to bring cocaine from California to Memphis. At trial, the government called several witnesses, some of whom were co-defendants. These witnesses testified about West's participation in the conspiracy. In addition, the government introduced three tape recordings into evidence. The tapes contained conversations in which West discussed trips he had made to California to bring back cocaine and how he had lied to the grand jury about his involvement in the conspiracy. West objected to the use of the tapes and the transcripts. In response to West's objections, the court read the transcript, listened to the tapes, and stated, "I don't think that there is really a problem with the accuracy of the transcript." At trial, the jury read the government-prepared transcripts while the tapes played. The court collected the transcripts after the tapes had been played and instructed the jury that only the tapes were evidence, not the transcripts.

On appeal, West argues that the court erred in allowing the admission of taped conversations of the defendant alleging that the tapes were untrustworthy because they were substantially inaudible. He further argues that the court improperly allowed the jury to use the government-prepared transcripts of the tapes even though the government failed to present evidence as to the accuracy of the transcripts and because the court did not make an independent determination as to the accuracy of the transcripts.

▇▇▇ Taped recordings are admissible unless the incomprehensible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy. *United States v. Robinson,* 763 F.2d 778, 781 (6th Cir.1985) ("*Robinson II*"). The decision to admit tapes is within the sound discretion of the court. *Id; see also United States v. Jones,* 540 F.2d 465, 470 (6th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). The decision to admit tape transcripts is also within the sound discretion of the court. *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983) ("*Robinson I*").

▇▇▇ This court has adopted several procedures for determining the accuracy of tape recording transcripts. *Robinson I,* 707 F.2d at 876–77. The preferred practice is to have both parties stipulate to the accuracy of the transcripts. *Id.* (citing *United States v. Slade,* 627 F.2d 293, 302 (D.C.Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980)). When the parties dispute the accuracy of the transcripts, the transcriber should attest to the accuracy of the transcripts, *United States v. Hughes,* 895 F.2d 1135, 1147 n. 22, and the court should make a determination of accuracy out of the jury's presence, by reading the transcripts while listening to the tapes. *Slade,* 627 F.2d at 302. The least preferred method is to have each party prepare transcripts for the jury. *Id.*[1]

▇▇▇ West argues that none of these options were utilized even though his counsel

---

1. Transcripts are typically used when a tape is of questionable clarity. It is extremely important that in admitting and using transcripts, a foundation is laid demonstrating the accuracy of the tapes. In *Slade,* 627 F.2d at 302, the court specifically addresses procedures to be used in admitting tapes. We have adopted these procedures in *Robinson I,* and reiterate them below:

It is within the trial court's discretion to allow the jury to use an accurate transcript "to assist them in listening to [a] tape." The need for a transcript tends to arise where ... portions of a tape were relatively inaudible and the identity of speakers was not automatically clear to a listener. Because a transcript is only meant to be a guide to evidence—the tape being played—it is important that the judge instruct the jurors that their personal understanding of the tape supersedes the text in a transcript....

objected to the use of the tapes and the transcripts. The government argues that the court used the second option. The record reflects that Special Agent Corbett Hart testified to the accuracy of the transcripts. The record also reflects that the court made an independent determination of the accuracy of the transcripts after reading the transcript, listening to the tapes and stating, "I don't think there is really a problem with the accuracy of the transcript." Thus, we find that the district court did not abuse its discretion.

■ West further argues that the standards for authenticity in Fed.R.Evid. 1006 apply to transcripts of tape recordings. However, for Rule 1006 to apply, the "writings"—in this case, the taped conversations—must be so voluminous that in-court examinations would be inconvenient. *United States v. Scales*, 594 F.2d 558, 562 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). West's argument, notwithstanding Rule 1006, is not applicable to the issue of the transcripts for two reasons. First, the tape recordings in this case were not "voluminous." Second, the transcripts were written copies of the conversations on the tapes, *not* summaries. We note as well that even if the court had erred in allowing the use of the transcripts, the record sustains the perjury conviction based on evidence independent of the transcripts.

■ West also argues that the government failed to meet its burden in proving the quantity of fifteen kilograms of cocaine attributed to West for purposes of sentencing under the Federal Sentencing Guidelines. West argues that the only evidence that connects him with a specific amount of cocaine was evidence of a sale of one gram of cocaine. Courts may not disturb a district court's factual findings that underlie its sentencing decision unless the

findings are clearly erroneous. *United States v. Todd*, 920 F.2d 399, 408 (6th Cir. 1990). In determining relevant conduct, a district court may consider not only the amount of drugs named in the indictment, but also quantities of drugs not specified, but that were part of the same course of conduct or common scheme or plan as the count of conviction. *United States v. Smith*, 887 F.2d 104, 106–108 (6th Cir.1989) (citing United States Sentencing Commission, *Guidelines Manual* § 1B1.3 at 1.19.); *see also United States v. Sailes*, 872 F.2d 735, 737–38 (6th Cir.1989). The evidence of other quantities of drugs involved must have a minimal level of reliability beyond mere allegation. *Smith*, 887 F.2d at 108.

■ There is ample testimony about multiple quantities and deliveries of cocaine. Ernestine Wynn testified that West transported four kilograms of cocaine from a deal that she arranged. Shirron Knox testified about West's involvement in approximately twelve transactions, each involving quantities of cocaine ranging from four to eight kilograms of cocaine. Eric Bovan testified that he sent West on three to four trips to transport cocaine and that on these trips the average amount of cocaine carried was six kilograms. The government alleges that West can be heard on the tapes discussing a ten-kilogram delivery in which he participated.

In reviewing the record, we find that the district court's decision to allow the use of transcripts as well as its sentencing decision are not clearly erroneous. We therefore affirm the district court's decision.

The ideal procedure for testing accuracy is to have the prosecution and defense attorneys stipulate to a transcript. When they cannot agree as to what is on tape, the second best alternative is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes. In either situation the jury receives a transcript, certified as a correct version of the tape. A third alternative is to present the jury with two transcripts, containing both sides' versions,

and let the jury determine which is more accurate. In this situation, because no one transcript is presented as "correct," the judge "need not necessarily listen to the tapes or pass on the accuracy of any transcript." *Slade*, 627 F.2d at 302 (citations omitted). Whenever transcripts are used, the person transcribing the tapes should testify concerning the accuracy of the transcripts and the method used in transcribing the tapes. *Hughes*, 895 F.2d at 1147 n. 2.