**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terry Francis GALLAGHER,**
**Defendant–Appellant.**

No. 01–3078.

United States Court of Appeals,
Sixth Circuit.

Jan. 24, 2003.

Before KRUPANSKY, CLAY, Circuit Judges, and GWIN, District Judge.*

PER CURIAM.

Defendant-appellant. Terry Francis Gallagher ("Gallagher") has charged the district court with five trial errors that resulted in his jury conviction for felonious possession of a firearm, in violation of 18 U.S.C. § 922. First, Gallagher has asserted that the district court abused its discretion by permitting the jury to track a written transcript of the defendant's conversations while listening to corresponding audio and video tapes of those recordings.

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting my designation.

Next, Gallagher has argued that the district court violated his Sixth Amendment right of confrontation when it decided the appellant's presence was unnecessary at an audibility hearing involving tape transcription. Third, Gallagher has urged this court to find the district court in error for refusing to admit the entirety of his statement to law enforcement subsequent to his arrest. Further, the defendant has asserted that the district court abused its discretion by admitting into evidence his prior kidnaping and escape convictions. Finally, Gallagher has contended that the district court erred by enhancing his sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) by virtue of his prior convictions. For the reasons explained below, the district court's decision is affirmed.

In 1975 and 1976, Gallagher was convicted of four counts of armed bank robbery in Indiana and Ohio, for which he received a 95 year prison sentence. In 1977, Gallagher had an additional 15 years added to his sentence when he kidnaped a prison guard, stole a government vehicle, and escaped from the federal penitentiary in Leavenworth, Kansas. After serving 23 years of his sentence. Gallagher was remanded to a halfway-house to serve his final months, where he solicited help for a proposed armed bank robbery from Martin Schmid, a childhood friend. Schmid contacted the FBI, for whom he had previously served as a paid informant, and agreed to act as a paid informant in the investigation of Gallagher. Schmid then contacted the appellant on numerous occasions between July 2 and August 19, 1999, to record Gallagher's discussions concerning his plans to commit a bank robbery.

On August 19, 1999, Gallagher met with Schmid in a motel room in Dayton, Ohio where Schmid furnished appellant with a semi-automatic weapon. In addition to the audio recording, this meeting was videotaped by the FBI. During the meeting Gallagher outlined his plans to commit a bank robbery and requested a second weapon from Schmid. After Gallagher left the motel room federal agents arrested him for felonious possession of a firearm. The government brought an indictment under 18 U.S.C. § 922(g) against Gallagher and, relying on defendant's earlier bank robbery convictions, filed notice for a sentencing enhancement pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

The district court engaged in two pretrial *in camera* hearings on the admissibility of the transcript of the audio and video tapes made during meetings between the defendant and Schmid. The parties stipulated to a majority of the recorded conversation. Two disputed sections of the transcript were submitted to the court for consideration and resolution. The district court determined that the government's version, as it related to the first disputed language, accurately reflected the defendant's statement. The trial court rejected both parties interpretations of the second controversial recorded conversation and interlineated the transcript with the notation. "unintelligible," as it related to the appellant's disputed statement. The transcript permitted the jury to track the video and audio tapes during trial, thus permitting it to arrive at an independent conclusion. The district court over-ruled Gallagher's objection to the jury's request to rehear parts of the recorded conversations during deliberation.

During the trial, Gallagher also objected to the testimony of a federal agent who tracked sections of defendant's post-arrest statement. Gallagher urged the court to admit his entire post-arrest statement into evidence, including his self-serving excul-

patory comments. The court overruled his efforts.

Additionally, during direct examination, Gallagher testified to having served his 23 years "straight" from his previous bank robbery convictions. The government sought to impeach Gallagher's credibility by introducing his prior escape and kidnaping convictions. The district court found that Gallagher's testimony opened the door to be cross examined on these prior convictions.

Subsequent to a five day jury trial, Gallagher was found guilty and sentenced to 210 months of incarceration, 5 years of supervised release and a $1000 special assessment penalty. Gallagher then filed this appeal.

### A. *Admissibility of the transcript*

This court reviews decisions concerning the admissibility of a transcript from video and audio tapes under an abuse of discretion standard. *United States v. Elder*, 90 F.3d 1110, 1129 (6th Cir.1996).

The decision to admit into evidence the transcript of taped recordings is within the discretion of the court and is permissible "unless the incomprehensible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy." *United States v. West*, 948 F.2d 1042, 1044 (6th Cir.1991). This court has approved several procedures for gauging the accuracy of a transcript of recorded conversations. Preferably, the parties may stipulate to the accuracy of the transcript. Secondly, the court may review the tran-

script while listening to the tapes, with the transcriber attesting to the accuracy of the transcript. *Id.* Lastly, each party may proffer their respective interpretations of the transcript for jury consideration. *Id.* In all instances, the court's concern remains with the fidelity of the evidence when a tape contains inaudible lapses, as "the jury's reliance on the transcript, in effect, transforms it into evidence." even though the transcript is not admitted as evidence. *United States v. Wilkinson*, 53 F.3d 757, 761–62 (6th Cir.1995).

The appellant has maintained that the district court abused its discretion by failing to have the transcriber attest to the accuracy of the transcript. Gallagher's contention fails to persuade this court where the joint appendix reflects that the district court carefully parsed the tapes and transcript, at length, prior to its ruling and its conclusion that the disputed components of the transcript contained no pivotal material. Indeed, the parties stipulated to all but two sections of the audio tapes, two sentences in a thirty page transcript. In the first disputed part, the district court determined the tapes matched the government's interpretation of the proposed transcript.[1] The court marked the other disputed track of the transcript as 'unintelligible.'[2]

The district court complied with this circuit's stated procedures for determining the accuracy of a transcript. The parties followed the preferred method and stipulated to the transcript's accuracy in all but the two sentences. The trial court's dispo-

---

1. Gallagher proposed that he stated. "Be back in the same day," while the government proposed that Gallagher stated. "Be back and do the same thing." This disputed sentence involved a conversation that took place at the motel where the government conducted the 'sting' to provide Gallagher with a gun. The undisputed part of the more than four pages of transcribed conversation, from that meeting, supports Gallagher's overwhelming culpability. J.A. Vol. 1 at 147.

2. Here Gallagher proposed that he said "You will, I won't," while the government proposed that Gallagher stated, "Yeah, we will (unintelligible)." J.A. Vol. 1 at 146.

sition of the issue did not constitute an abuse its discretion.

■ Even assuming, *arguendo,* that the district court had committed an abuse of discretion by not having the transcriber attest to the two sentences under dispute, the court's decision amounted to harmless error. The disputed sentences were not pivotal in sustaining appellant's culpability, and the government relied primarily on separate videotape evidence of Gallagher accepting the firearm from Schmid.

B. *Appellant's presence at a pretrial audibility hearing*

In reviewing the decision of the trial court to conduct the second of two *in camera* hearings concerning the admissibility of the transcript evidence in the absence of the defendant this court considers the record in its entirety. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (*per curiam* ).

The Sixth Amendment affords defendants the right to confront witnesses and the evidence adduced against them. *Id.* Moreover, under the Fifth Amendment the defendant has a due process right to appear "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" Id. *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Riddle,* 249 F.3d 529, 534 (6th Cir.2001).

■ Nevertheless, defendant's right to be present is not all-encompassing or absolute. Indeed, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *United States v. Gagnon,* 470 U.S. at 526–27, 105 S.Ct. 1482. Moreover, this privilege of presence is not guaranteed "when presence would be useless, or the

benefit but a shadow." *Snyder v. Massachusetts,* 291 U.S. 97, 106–107, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Cf. Fed.R. Crim P. 43(c)(3) ("A defendant need not be present ... when the proceeding involves only a conference or hearing upon a question of law."). In the instant case, the appellant's counsel was present at each of the two audibility hearings and, in fact, determined herself that appellant's presence was unnecessary on December 17, 1999, because he had heard the tapes and reviewed the transcript. J.A. Vol. II at 491. Moreover, appellant's familiarity with the tapes and transcript, provided him with the opportunity to direct counsel in submitting the defense version of the transcript.

In light of appellant's proffer of an alternative transcript prior to the audibility hearing and the presence of defendant's counsel during the second hearing, appellant's presence during that audibility hearing was not "critical to [the] outcome" of the proceeding against him. *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). Gallagher's presence, during a hearing in which the court adjudicated two disputed, and non-pivotal, transcript sentences, was not critical to the outcome of his trial.

Moreover, the appellant has provided no indication that his presence at the hearing would have been useful in ensuring a more reliable determination as to the contents of the taped conversations. As the Court noted in *United States v. Gagnon,* 470 U.S. at 527, 105 S.Ct. 1482, a criminal defendant's due process rights to be present are not violated when there is no indication that respondent "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending." Because Gallagher has not proven that his presence at the second audibility hearing would have contributed to the fairness of

the proceeding, he has failed to support a constitutional violation.

However, assuming *arguendo,* that appellant had been absent from a critical stage of the proceedings, his or her absence would constitute harmless error, unless it affected "substantial rights." *See, e.g., Rushen v. Spain,* 464 U.S. 114, 118–19, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). An error is harmless, and therefore does not mandate reversal and a new trial, unless it affects "substantial rights." Fed. R.Crim.P. 52(a).

■ In this case, several factors mitigated against finding that appellant's absence was anything more than harmless. Reviewing the transcript in its entirety, it reflected the vigilant presence of appellant's counsel, and the careful procedural path imposed by the trial court in determining the contents of the tape, the admittedly narrow and particular nature of the interpretive dispute, and the accompanying, considerable additional evidence of appellant's violations. *Yates v. United States,* 418 F.2d 1228, 1229 (6th Cir.1969); *United States v. Brown,* 571 F.2d 980, 986–87 (6th Cir.1978) (an in chambers conference concerning the dismissal of a juror is a stage of the trial within the meaning of rule 43(a) and not excluded by rule 43(b) or (c), but as defense counsel was present and the conference was recorded it was clear beyond the slightest doubt that defendants were not prejudiced by not being present.); *United States v. Rodriguez,* 67 F.3d 1312, 1316–17 (7th Cir.1995), *cert.*

*denied,* 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (District court's erroneous failure to secure defendant's presence before discussing with counsel jury requests to see transcript of testimony or to hear tape recordings of such testimony was harmless, where defense counsel agreed to judge's handling of requests and defendant gave no indication of what he might have said to persuade judge to take different course of action). Despite Gallagher's absence from the audibility hearing, other conditions ensured his ability to receive a fair and just trial.

C. *Admission of Gallagher's post-arrest statement*

This court reviews "the trial court's admission of testimony and other evidence under the abuse of discretion standard." *United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993).

Subsequent to his arrest for the felonious possession of a firearm, appellant provided a statement to the arresting agents. Gallagher admitted to being a convicted felon and knowing that he was prohibited from possessing a firearm. In his statement, appellant also commented that he had been 'hounded' by Schmid to appear at the hotel, was 'set-up' by federal agents and was not planning to rob a bank 'one last time." J.A. Vol. IV at 624. While the government used segments of appellant's statement during trial, the court rejected appellant's request to admit his entire statement on the basis that the comments were not offered against a party opponent and amounted to inadmissible hearsay.[3]

---

**3.** The court considered the remainder of Gallagher's statement to the federal agent as inadmissible hearsay, to which none of the exceptions, outlined in Fed.R.Evid. 803, apply. The court stated:

If offered for the truth of the statement, i.e., that [Schmid] set me up, he hounded me, and the like. I believe it's inadmissible hearsay. It's not an admission of a party opponent. Indeed, it's an admission of himself, a statement that he made to [the federal agent], offered by him, offered by Gallagher.

. . . .

In contesting the lower court's determination, the appellant has employed the "rule of completeness" rationale drawn from Fed.R. Evid. 106, which requires that:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part of any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Courts have interpreted Rule 106 to demand that "a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a 'fair and impartial understanding' of the admitted portion." *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). However, as the court observed:

> Portions of a statement admitted under Rule 106, the rule of completeness, do not impact on the hearsay rule, because in effect, they are not offered for the truth. Their purpose in being offered is to put statements already admitted into the proper context. So, the hearsay rule is not implicated by the use of [Rule] 106.
>
> . . . .
>
> Rule 106 encourages completeness. It restricts the requirement of completeness, however, by the qualification that the portion sought to be admitted be relevant to the issue, and only those parts which qualify or explain the subject matter of the portion offered by opposing counsel should be admitted.

*Id.*

█ The trial court properly concluded that the admitted part of Gallagher's statement—his admissions that he was a felon, knew that he was not to possess a firearm, and that his female companion had nothing to do with the crime—did not require appellant's additional self-serving exculpatory comments for completeness. Moreover, appellant's self-serving sections of his statement were inadmissible hearsay unaffected by Rule 106. As this circuit has observed, "the completeness doctrine embodied in Rule 106 should not be used to

Basically, what it is is a statement by Mr. Gallagher that [the federal agent] wrote down because he was under obligation to do it, and it simply is inadmissible hearsay. J.A. Vol. II at 417.

As the court, in *United States v. Marin*, 669 F.2d 73, 84 (2d Cir.1982), discussed, in the similar context of an appellant's redacted statement:

> When the government offers in evidence the post-arrest statement of a defendant it commonly does so for either of two reasons. It may wish to use the statement to establish the truth of the matter stated. In these circumstances, under Rule 801(d)(2)(A) the statement is not hearsay, because it is simply a statement of the opposing party. On the other hand, the government may wish to offer the statement to show that the defendant made false representations to the authorities, from which the jury could infer a consciousness of guilt, and hence guilt. In these circumstances the statement obviously is not offered for the truth of the matter asserted, and therefore is non-hearsay under Rule 801(c), as well as non-hearsay under Rule 801(d)(2)(A) as the statement of an opposing party. Regardless of which purpose the government had in offering the defendant's statement, the statement as thus offered is not hearsay.
>
> When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible. When the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit. In the present case, Romero's prior statement that Marin put the bag [of cocaine] into Romero's car was hearsay if offered to prove that fact, and was irrelevant if offered simply to prove that Romero had made such an allegation.

make something admissible that would otherwise be excluded." *Trepel v. Roadway Express Inc.,* 194 F.3d 708, 718 (6th Cir.1999). See *also United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982).

Appellant's self-serving exculpatory statements regarding entrapment were inadmissable hearsay that could not be made admissible under the Rule 106 doctrine of completeness. The trial court did not abuse its discretion by ruling appellant's statements inadmissible. Moreover, even if the court should have admitted appellant's entire statement, its failure to do so was harmless, as Gallagher testified at length regarding his putative entrapment by Schmid and his corresponding statements to federal agents upon his arrest.

D. *Admitting evidence of prior convictions*

This court reviews evidentiary rulings under an abuse of discretion standard. *United States v. Hilliard,* 11 F.3d 618, 619 (6th Cir.1993). Under this highly deferential standard, even if the lower court abuses its discretion, the decision below will not be disturbed unless resulting in a "substantial injusstice." *Zamlen v. City of Cleveland,* 906 F.2d 209, 216 (6th Cir. 1990). A trial court's evidentiary ruling does not warrant reversal "simply because an appellate court believes it would have decided the matter otherwise," but requires that the abuse amount to more than harmless error. *United States v. Schrock,* 855 F.2d 327, 333 (6th Cir.1988).

At trial, Gallagher testified on his own behalf, contending that federal agents and Schmid had 'trapped' him into violating the prohibition against felons possessing firearms. Gallagher testified about his prior two bank robbery convictions and admitted that he had perjured himself in one of the bank robbery trials. He told the jury that serving his time in prison had reformed

him, compelling him to get his life back on track. During defense counsel's direct examination of appellant, regarding his putative rehabilitation while serving his sentence, the following colloquy occurred:

Q. Now, Mr. Gallagher, you lied before in court. Why should we think you won't lie now?

A. Like I said, I was young, couldn't accept responsibility.

Q. Has that changed?

A. Yes, Ma'am.

Q. How do you feel now?

A. I feel that I'm more mature, that I understand things more clearer, and I'm trying to do the right thing.

Q. Do you feel like it was a mistake for you to lie during the first trial?

A. Yes ma'am.

Q. Why is that?

A. Because it wasn't the right thing to do.

Q. How long were you in jail for those robberies?

A. Twenty-three years.

Q. Were those 23 years straight?

A. (nodding affirmatively.)

Q. When did you get out of jail?

A. September 24th, 1998.

Q. And, when you first got out of jail, did you have any thought about wanting to commit a bank robbery?

A. No, ma'am.

Contrary to appellant's testimony, his 23 year prison term was not served 'straight,' but reflected his initial bank robbery convictions and his subsequent conviction for kidnaping and escape from the state penitentiary. As a consequence of this misleading testimony, the court considered the door open, to permit the government to impeach the appellant by introducing evidence of his escape and kidnaping conviction, pursuant to Fed. R. of Evid. 403.

■ Rule 403 provides a balancing test through which, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the case at bar, the court concluded that the probative value of the evidence for impeachment purposes outweighed possible prejudice to the appellant Consequently, the trial court did not abuse its discretion.

The appellant sought to prove his primary defense, that he was entrapped by federal agents, by testifying to his rehabilitation after a 23 year sentence for bank robberies. In this context, the appellant placed his credibility in issue when he proffered the misleading scenario that he had served time only for bank robberies that reflected his youthful indiscretion. Consequently, the probative value of a limited inquiry into the appellant's subsequent escape and kidnaping conviction, reflected in his 23 year sentence, gained enough significance to trump any prejudice visited on the appellant. Any possible prejudice was mitigated by the court's limiting instructions and the succinct cross-examination in which Gallagher admitted that while imprisoned for the bank robberies he stole government property, kidnaped a guard and an inmate, escaped from prison and was at large for several months.

Even assuming, *arguendo*, that the prejudicial value of the testimony outweighed its probative benefit under Rule 403, this court finds no reason to disturb the judgment below on this issue, as any putative error by the court, in this regard, was insufficiently prejudicial to warrant overturning the conviction under Fed.

R.Crim.P. 52. Applying the provisions of Rule 52, the United States Supreme Court has directed that when an error has little or no influence on the jury's judgment that error must be regarded as harmless and the verdict should stand. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The cumulative weight of the evidence against Gallagher was more than enough to find him guilty beyond a reasonable doubt.

Further mitigating the harm of any possible error, the court limited the scope of the use of the escape and kidnaping conviction by refusing to allow discussion concerning other bank robberies committed while appellant was at large and by prohibiting any exchange regarding the graphic details of the kidnaping. Additionally, the court provided the jury with an instruction, during cross-examination, limiting the use of the escape and kidnaping testimony solely to impeachment of the appellant's credibility. In this circuit, when a court provides instructions that correct any errors we find no basis upon which to overturn a criminal conviction. *United States v. Carter*, 236 F.3d 777, 787 (6th Cir.2001).

E. *Gallagher's sentence enhancement under the ACCA*

The district court enhanced Gallagher's sentence because of his prior convictions by virtue of 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA), which provides that "[i]n the case of a person who ... has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined not more than $25,000 and imprisoned not less than fifteen

years[.]"[4] (emphasis added). Relying on language in *United States v. Thomas,* 211 F.3d 316 (6th Cir.2000)(Clay,J., concurring), Gallagher has challenged the ACCA as unconstitutionally vague, urging this reviewing court to conclude that it does not clearly delineate how different the criminal occasions must be from one another to trigger application of the Act. The argument is less than convincing.

▉ For several reasons, the language of *Thomas* does not aid the appellant's charge. First, in *Thomas.* Judge Clay made his observations concerning the putative ambiguity of the ACCA language in the context of the lenity doctrine, which cautions the court to "not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *Id.* at 322 (*citing Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)). Yet, courts deploy the lenity doctrine when the application of a statutory enhancement is ambiguous, not as in the instant case, where appellant's enumerated felonies were decidedly separate occurrences. There is no dispute that Gallagher's various bank robberies were committed on different occasions. Second, Judge Clay's saving construction of the ACCA, avoided the vagueness question. Under this construction, the enhancement does not apply where the facts are ambiguous as to whether the crimes were committed on occasions different from one another. *Thomas* 211 F.3d at 323 ("However, it is unnecessary under the circumstances of this case to express an opinion as to the constitutionality of the statute, and I expressly refrain from doing so....[We] must save a statute from its constitutional infirmity, and any doubt on the issue of statutory construction should thus be resolved in favor of avoiding the void for vagueness question....In this case, where the facts do not lend themselves to a determination of whether the crimes were "committed on occasions different from one another," the rule of lenity should be deemed to control")

This reviewing court has carefully considered the assignments of error proffered by the appellant and has concluded that they lack merit. Accordingly, the judgment of the district court is AFFIRMED.

GWIN, District Judge.

Although I concur with the majority's decision to affirm, I reach that conclusion by a somewhat different path. Unlike the majority, I find the district court erred when it conducted a hearing on the accuracy of transcripts of undercover tapes outside the presence of defendant. Separately, I believe the district court erred when it allowed Gallagher to be impeached by evidence of an escape. The probative value of the impeachment testimony was substantially outweighed by its prejudicial effect. Although I find the district court erred with these rulings, I find the errors were harmless beyond a reasonable doubt. I would affirm the district court.

Before trial, the district court conducted two hearings to determine whether a transcript accurately reflected conversations contained on undercover tapes. The Court conducted the hearings outside the pres-

---

4. The United States filed the notice required by 18 U.S.C. § 924(e) noting four separate armed bank robbery convictions, while the indictment noted these same convictions as predicates for being a prohibited person under 18 U.S.C. § 922(g). The appellant did not challenge the validity of these convictions, and the district court, at sentencing, took judicial notice of the three Southern District of Ohio predicate convictions. J.A. Vol. 2 at 531.

ence of Defendant Gallagher. I find that the district court erred by not allowing the Defendant to attend the second audibility hearing. However, in reviewing this error in "light of the entire record as a whole" I find this error was not sufficiently prejudicial to warrant a new trial.

The Confrontation Clause of the Sixth Amendment to the U.S. Constitution requires a defendant to be confronted with witnesses or evidence against him. *U.S. v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). Beyond the right to be present when evidence is being offered, a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.* at 527, 105 S.Ct. 1482, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Reflecting this confrontation right, Fed. R. Crim P. 43 generally requires a defendant's presence excepting "when [t]he proceeding involves only a conference or hearing upon a question of law."

During the audibility hearings, the district court sought to determine what was being said in the recorded conversations that would be offered as evidence against the defendant. In conducting this review of the evidence that would be offered against Gallagher, the district court did not deal with a question of law. Instead, the district court was intimately involved with weighing evidence to determine its admissibility. Fed.R.Evid. 104. The Defendant should have been present.

While Gallagher should have been present during the review of the tapes, any error was harmless. No sufficient prejudice resulted from the Defendant's absence to warrant a new trial.

First, Gallagher's counsel waived his presence at the first audibility hearing.

At that hearing, his counsel stated that Gallagher had heard and seen all of the tapes and had reviewed the transcripts. Therefore, Gallagher received some opportunity to be active in determining the accuracy of the transcript.

More important, the parties stipulated to all but two sentences in the entire record of transcripts. Gallagher stipulated to the broad majority of the transcript after he had the chance to review it. While Gallagher should have been present at the audibility hearings, I find that Gallagher's absence at the audibility hearings was not sufficiently prejudicial "in light of the entire record as a whole."

In a second area where I disagree with the majority's reasoning, I believe the district court erred when it admitted evidence of the defendant's prior criminal acts. At trial and after Gallagher testified, the district court allowed impeachment evidence of an escape and kidnaping conviction that occurred more than twenty years previous while Gallagher was a prisoner at Leavenworth, Kansas. Under Fed.R.Evid. 403, the prejudicial value of this evidence substantially outweighed its minimal probative value. However, I agree that the error in allowing the testimony is insufficiently prejudicial to warrant overturning the conviction. Fed.R.Crim.P. 52. Therefore, I find no reason to disturb the judgment below on this issue.

Gallagher took the stand on his own behalf at trial. He testified that he had been entrapped by federal agents and the agents' cooperating witness into possessing a firearm. In his testimony, Gallagher attested to past criminal conduct and stated that his long incarceration had caused him to reform after serving more than twenty-three years in prison. He testified that he was now trying to do the right thing to get his life back on track.

During his testimony, Gallagher gave the following testimony which the government argued opened the door for impeachment evidence of the escape conviction:

Q. How long were you in jail for those robberies?

A. Twenty-three years.

Q. Were those 23 years straight?

A. (Nodding affirmatively.)

On cross-examination, counsel for the government received approval to impeach Gallagher with evidence of an escape from prison, an escape that involved a kidnaping and that occurred more than twenty years previous. Justifying the use of this evidence, the government argued that Gallagher falsely testified that he had been in jail for twenty-three years straight for the earlier robberies. The government argued that the escape interrupted the years of incarceration and Gallagher had been in jail only about twenty-two years straight, not twenty-three years straight. Gallagher had initially been sentenced to more than ninety years on the earlier bank robbery cases. The government also argued that the above-cited testimony was false because some of the twenty-three years of incarceration may have resulted from escape, not just the earlier bank robberies.

The district court agreed with the government and ruled that Gallagher's testimony had been misleading and even false about the reason why he was in prison for twenty-three years and the fact that there was no break in the duration of his prison sentence. The district court stated during trial. "here a defendant has taken the witness stand, has cried, has told a lie to a question that, in my opinion, is not subject to misinterpretation, and the door has been opened." The district court allowed the impeachment of Gallagher about his escape and kidnaping conviction into evidence under Fed.R.Evid. 403. The district court found the probative value of allowing

the impeachment testimony substantially outweighed the prejudicial effect. I disagree.

Fed.R.Evid. R. 403 says. "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Fed.R.Evid. 403 directs the district court to balance the probative value of evidence sought to be excluded against the harm likely to result from its admission. 22 C. Wright & K. Graham. Federal Practice & Procedure: Evidence § 5214, at 263 (1978). Evidence should not be admitted where the probative worth of the evidence is "substantially outweighed" by the danger of unfair prejudice.

Using this methodology, we first look to the probative value of the evidence the United States put before the jury. Summarizing. Gallagher suffered convictions for bank robberies occurring in 1976 and 1977. Within a year of being sentenced to ninety-five years incarceration for those robberies, he escaped from prison and was on the lam for a couple of months before being apprehended and convicted for offenses associated with the escape. He then served approximately twenty-three years of incarceration before being paroled.

The United States argues that Gallagher's twenty-three years of incarceration included time resulting from the escape, not just from the 1975 and 1976 bank robberies. But given Gallagher's ninety-five year sentence for the original bank robberies, there is no showing that Gallagher would have been otherwise released from the ninety-five year sentence absent

the escape.[1] But more important, Gallagher offered evidence of his long incarceration to show a changed disposition to crime. Whether the twenty-three year incarceration was for escape, or bank robbery has no relevance to whether the incarceration changed Gallagher's propensity for crime.

As another justification for bringing the escape and hostage taking before the jury, the United States says that Gallagher testified falsely that his period of twenty-three years of incarceration was "straight". As to this argument, the United States seems to say that Gallagher served twenty-two, not twenty-three years of incarceration straight and the difference is somehow important to whether the incarceration affected Gallagher's disposition towards criminal activity.[2]

Against this minimal relevancy, we consider whether its relevancy is "substantially outweighed by the danger of unfair prejudice." In challenging Gallagher's testimony that his long imprisonment reformed his disposition to bank robbery, the United States gave evidence that in 1977 Gallagher escaped and kidnaped a prison guard. The testimony was obviously prejudicial. I find little connection between a prison kidnaping more than twenty years

prior, and some determination of whether the subsequent imprisonment reformed his disposition to crime.

So I find the trial court abused its discretion when it allowed testimony about an escape twenty-three years previous to the trial I now consider whether this error warrants reversal.

Under Fed. R. Crim P. 52, any error that does not affect substantial rights shall be disregarded. In applying the provisions of Rule 52, the Supreme Court has held that the harmless error rule stops convicted defendants from automatically obtaining a reversal based on erroneous rulings which did not have a prejudicial influence on the jury's decision.

Specifically, the Supreme Court has held that an error is harmless if the reviewing court finds it clear that the error did not influence the jury or had only a slight effect. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Unless attended by a structural error which require automatic reversal, trial errors are subject to harmless-error analysis, which require automatic reversal. *Id. See also, Kotteakos v. U.S.*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)(stating that "the purpose of the

---

1. At trial, the district court reflected the lack of clear evidence regarding whether Gallagher would have been released in less than twenty-three years had he suffered only the 1975 and 1976 bank robbery convictions:

   THE COURT: So—and, again, I suppose this could be argued. So, it is at least probable, not certain, because nothing was certain under the old sentencing law, but it's at least probable that a portion of the 23 years he served was because of the escape and the kidnaping charge. So, he did not serve 23 years on the robberies. He served 23 years on the robberies, plus the escape and kidnaping charge.

2. In allowing the testimony, the trial court relied upon the argument that use of the

phrase "straight" in reference to events in 1977 had opened the door to testimony regarding the escape and kidnaping of the prison guard:

THE COURT: "Straight" may mean straight time the way you phrased the question, but the way anyone would—that may have been your intent. The way anyone would understand that question is that you went into prison and 23 years later you walked out of prison, with no hiatus in time served. The door has been opened for escape. It's been opened for kidnaping. It's been opened for being out of prison for a number of months...."

App. at 459–60.

harmless error rule was to substitute judgment for the automatic application of rules. The underlying trial below must be examined in its entirety, with a view to determining not only whether the jury was correct in its judgment regardless of the error, but also what effect the error had, or could reasonably be taken to have had, upon the jury's decision. If the error had not influenced the jury or had only a very slight effect, then the verdict should stand."

Here, I find that given the evidence shown against the defendant, the errors in improperly admitting evidence of the escape and the circumstances of the escape were harmless. The cumulative weight of the other evidence against Gallagher was more than enough to find him guilty beyond a reasonable doubt. Furthermore, the district court issued several limiting instructions to cure any prejudice that may have resulted from allowing the impeachment testimony. The district court instructed the jury that it could only use testimony about Gallagher's prior escape and kidnaping to evaluate his credibility and not to determine his guilt concerning the current charges against him I find that the district court committed harmless error in allowing the impeachment testimony, which falls short of the kind of error needed to warrant a new trial.