16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee,
v.
Curtis BLACKWELL; and Billy Frank Richard, Sr.,
Defendants-Defendants.
 Nos. 93-3068, 93-3069.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1994.
 
 Before: JONES and SUHRHEINRICH, Circuit Judges; and MCKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants-Appellants Curtis Blackwell and Billy Frank Richard, Sr. appeal their convictions and sentences following a jury trial for possession with intent to distribute cocaine. For the reasons stated herein, we AFFIRM.
 
 I.
 
 2
 Richard, Sr., Blackwell, and Willie Rox, the government's star witness, were all residents of Pasadena, California. Richard, Sr. approached Rox some time in March of 1990 to ascertain whether Rox still had connections in Cleveland, Ohio that would be interested in purchasing cocaine. Following this conversation, Rox determined that sales in Cleveland could be established. Accordingly, he informed Richard, Sr. that distribution would be possible, and the first trip to Cleveland was planned. Rox was instructed to contact either Richard, Sr. or his son Richard, Jr. upon Rox's arrival in Ohio. Once Rox informed the Richards of his whereabouts, Blackwell, a frequent courier for the Richards, delivered a shipment of five to six kilograms of cocaine to Rox at his hotel in Cleveland. As soon as Rox sold this shipment of cocaine, he contacted the Richards to arrange for the collection of the proceeds. Five subsequent trips to Cleveland were virtually identical to the initial venture. The quantity of drugs delivered by Blackwell on each of these five trips ranged from five to thirteen kilograms of cocaine.
 
 
 3
 On Rox's seventh trip to Cleveland, just after Thanksgiving, Rox, after speaking with the Richards, received and sold four kilograms of cocaine. More importantly, it was during this trip that Rox was introduced to undercover DEA agent Richard Cerniglia, along with a second agent who was posing as Cerniglia's brother. Unbeknownst to Rox, Cerniglia began investigating Rox on November 28, 1990.
 
 
 4
 The eighth trip to Cleveland in January 1991 was Rox's last. On January 14, 1991, Rox requested an $8,000 loan from Cerniglia in order to settle unpaid debts with the Richards. Cerniglia refused to give Rox the loan, but agreed to purchase one kilogram and twelve ounces of cocaine instead. Later that same day both Rox and his brother were arrested, and DEA agents seized approximately 1.3 kilograms of cocaine.
 
 
 5
 Following his arrest, but prior to his arraignment, Rox was informed that he may receive more lenient treatment in exchange for his cooperation. He agreed, and consequently placed a telephone call to the Richards, which was recorded by the DEA. Rox made three additional phone calls following his arraignment, the last of which involved Richard, Sr., which were also recorded by DEA agents.
 
 
 6
 Blackwell and Richard, Sr. were indicted by a grand jury on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846, on March 17, 1992. On May 6, 1992, Blackwell was arrested. Five days later, Richard, Sr. was arrested. Richard, Sr. pled not guilty before a magistrate in the Northern District of Ohio on June 11, 1992. On July 8, 1992, Blackwell similarly entered a plea of not guilty.
 
 
 7
 At trial, Richard, Sr. filed a motion to suppress the recorded telephone conversations. At the suppression hearing, Richard, Sr. alleged that 1) the transcripts were not accurate, 2) one of the tapes was incomplete, and 3) Rox had not voluntarily consented to the recordings. Based upon evidence presented during a suppression hearing, the district court denied the motion to suppress, and proceeded with the trial.
 
 
 8
 At sentencing, the court assigned both Richard, Sr. and Blackwell a base offense level of 34, and sentenced them to 160 months plus 5 years supervised release. This appeal followed.
 
 II.
 
 9
 Appellant Richard, Sr. first argues on appeal that the trial court impermissibly limited the defense's cross-examination of Rox regarding Rox's 1988 conviction for his involvement in a large scale cocaine distribution scheme. Although a trial court is granted broad discretion with respect to its supervision of cross-examinations, it is prohibited from restricting cross-examination in such a way as to impede the defense's ability to elicit facts that might allow the jury to infer that an adverse witness is biased. Dorsey v. Parke, 872 F.2d 163, 166-167 (6th Cir.1989), cert. denied, 493 U.S. 831 (1989). However, a review of the transcript reveals nothing to support Richard, Sr.'s contention that the trial court's limitation was inappropriate. Accordingly, the court did not abuse its discretion by placing certain permissible limitations on the cross-examination of Rox.
 
 III.
 
 10
 Next Richard, Sr. argues that the trial court abused its discretion when it refused to suppress the tape recorded conversations between Richard, Sr. and Rox.
 
 A. THE VOLUNTARY NATURE OF ROX'S CONSENT
 
 11
 Richard, Sr.'s first criticism is that the recordings were made without Rox's voluntary consent. Richard, Sr. asserts that the record does not indicate that Rox was ever given a Miranda warning, nor that he was told that he could refuse to consent to the recording. In addition, Richard, Sr. points out that Rox consented to and executed the first recorded conversation before Rox had been arraigned or had the benefit of counsel. Consent is a factual determination for the district court which is overturned only upon a finding of clear error. United States v. Kelly, 913 F.2d 261, 265 (6th Cir.1990).
 
 
 12
 In United States v. Watson, 423 U.S. 411, 424-25 (1976), the Supreme Court considered seven factors in determining whether or not a consent was voluntary: 1) whether there was any threat or act of violence; 2) whether there were promises made that would flaw judgment; 3) whether consent was given in public or in a police station; 4) whether the person consenting was a "newcomer" to the legal system; 5) whether the person consenting was mentally deficient; 6) whether the person consenting was unable to exercise free choice regarding consent; and 7) whether Miranda warnings had been issued. See also United States v. Jones, 846 F.2d 358, 360-62 (6th Cir.1988) (applying similar factors and finding that consent was not voluntarily obtained due to defendant's limited education, and the failure of officers to provide Miranda warnings).
 
 
 13
 In the instant case, Richard, Sr. does not allege that consent was obtained through threats of violence; nor that Rox was a newcomer to the legal system; nor that Rox was mentally deficient or unable to exercise free will. Richard, Sr. does contend that Rox was not given Miranda warnings, however, this assertion is directly contradicted by Cerniglia's testimony at trial. Consequently, only the second and third factors remain to support Richard, Sr.'s position. However, we determined in United States v. Franks, 511 F.2d 25, 30-31 (6th Cir.1975), cert. denied, 422 U.S. 1042 (1975), that promises or deals with an individual do not necessarily destroy the voluntariness of proffered consent. Similarly, that consent was given while Rox was in custody is also insufficient, in and of itself, to defeat an assertion that consent was voluntary. Watson, 423 U.S. at 424. Furthermore, Rox has steadfastly maintained that his consent was voluntary, and he did not rescind this consent after consulting with an attorney. We found this to be important in determining whether consent was voluntary in United States v. Blakeney, 942 F.2d 1001, 1015 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992). In light of the foregoing, Richard, Sr. alleges no facts that can support a finding of clear error.
 
 B. THE TRUSTWORTHINESS OF THE TAPES
 
 14
 Richard, Sr. also contends that the tapes should not have been admitted because they were not trustworthy. This argument is premised upon the fact that Cerniglia's tape recorder did not record the beginning of the conversation on Government's exhibit 13. The exact length of the unrecorded portion of the conversation was undetermined and Cerniglia admitted that it may have been as long as 20 seconds. J.A. at 54. Cerniglia did not notice that his tape recorder was off during the beginning of the conversation. Once he realized that it was, he immediately turned the recorder on. J.A. at 41.
 
 
 15
 In United States v. Robinson, 707 F.2d 872, 876 (6th Cir.1983), we found that in order for tapes to be admissible they must be "authentic, accurate and trustworthy." A determination by the trial court that tapes are admissible is reversed only if the court has abused its discretion in so finding. United States v. Sivils, 960 F.2d 587, 597 (6th Cir.1992), cert. denied, 113 S.Ct. 130 (1992).
 
 
 16
 In the instant case, the trial court considered the trustworthiness of the tapes in light of the fact that up to twenty seconds of conversation were missing from the tape. The trial court also considered Rox's testimony that the tapes were an accurate reproduction of what was said. J.A. at 83. There was not a claim that the tape was inaudible or otherwise flawed. Thus, while a complete tape would certainly have been preferable, in light of the evidence we cannot say that the trial court abused its discretion in finding that the tapes were accurate and trustworthy.
 
 IV.
 
 17
 Richard, Sr.'s third assignment of error is that the trial court failed to review the transcripts of the tapes before submitting them to the jury. Such an analysis by the lower court was arguably required as objections were made regarding the transcripts accuracy.
 
 
 18
 In United States v. Robinson, 707 F.2d 872, we suggested several procedures that should be followed if the parties could not agree to the accuracy of the transcripts; concluding that in the absence of a consensus,
 
 
 19
 the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The court should also make an independent determination of accuracy by reading the transcript against the tape. Where, as here, there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript. This, however, assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy.
 
 
 20
 Id. at 878-79. We found that the trial court abused its discretion in that case by using disputed transcripts without following these procedures, because "neither the preparation nor use of the transcripts at issue bears any semblance of reliability." Id. at 877.
 
 
 21
 We adopted a similar approach in United States v. West, 948 F.2d 1042, 1044 (6th Cir.1991) (citation omitted), cert. denied, 112 S.Ct. 1209 (1992), where we stated, "[w]hen the parties dispute the accuracy of the transcripts, the transcriber should attest to the accuracy of the transcripts, and the court should make a determination of accuracy out of the jury's presence, by reading the transcripts while listening to the tapes." See also United States v. Hughes, 895 F.2d 1135, 1147, n. 22 (6th Cir.1990). In West, because a special agent had testified to the accuracy of the transcripts, and because the trial court had conducted an in camera determination of the accuracy of the tapes, the trial court was not found to have abused its discretion.
 
 
 22
 In the instant case, no in camera review of the transcripts was conducted before they were submitted to the jury. This, the defendants allege, was an abuse of the trial court's discretion in light of Robinson. However, the procedures adopted by the Robinson court were not compulsory nor all-inclusive. The Robinson court specifically found that the outlined procedures were "not exhaustive." 707 F.2d at 877. The court's primary focus was not with the adoption of specific and mandatory procedures, but was instead motivated by the need for "basic safeguards to ensure reliability." Id. Such safeguards were present in the instant case.
 
 
 23
 Both at the suppression hearing and at trial, Willie Rox testified that the transcripts were accurate representations of his conversations. J.A. at 83-85, 253. In addition, the transcripts were not admitted into evidence, id. at 382-83; and the court gave an explicit instruction to the jury regarding the transcripts' limited use. Id. at 254. Finally, the defense did not object to specific inaccuracies in the transcript, but instead relied on general assertions of error. Such objections were found by the Eighth Circuit to be insufficient to bar jury use. United States v. Voss, 787 F.2d 393, 402 (8th Cir.1986), cert. denied, 479 U.S. 888 (1986) ("Voss proffered generalized assertions of inaccuracy. But the record is barren of a specific objection on accuracy grounds"). In light of the foregoing, we cannot find that the trial court abused its discretion by failing to review the transcripts before they were submitted to the jury.
 
 V.
 
 24
 Both defendants argue that the trial court erroneously concluded that they should be assigned the base offense level of 34. Defendants, citing the language of the trial court, assert that their base offense levels were impermissibly based on the scope of the entire criminal conspiracy which was estimated to involve roughly 49 kilograms of cocaine.
 
 
 25
 The trial judge stated, "[e]ach of the co-conspirators is liable, if you will, under the law for the actions of the others or any others involved." J.A. at 514. However, this declaration is erroneous. In United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 990 (1990), we held that:
 
 
 26
 the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible.
 
 
 27
 See also United States v. Blakenship, 954 F.2d 1224, 1228 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992); and United States v. Sims, 975 F.2d 1225, 1242-43 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993).
 
 
 28
 Nevertheless, base offense level 34 applies to crimes involving at least 15 kilograms but less than 50 kilograms of cocaine. United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(c)(5). In the instant case there was considerable testimony linking each of the defendants to at least 15 kilograms of cocaine. See, e.g., J.A. at 155-225. Accordingly, despite the judge's misstatement, the defendants were sentenced appropriately. The trial court did not abuse its discretion by sentencing under this level.
 
 VI.
 
 29
 Blackwell argues that due to alleged contradictions in the government's case against him, his conviction is not supported by sufficient evidence. He is essentially asking this court to reweigh the evidence. However, this is not an appropriate function for a reviewing court. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 30
 The Government presented evidence, through the testimony of Rox, that Blackwell was the primary drug courier for the Richards' Cleveland operation. "[T]he uncorroborated testimony of an accomplice may support a conviction under federal law." Blakeney, 942 F.2d at 1010 (quoting United States v. Frost, 914 F.2d 756, 762 (6th Cir.1990). Therefore, viewed in the light most favorable to the Government, it cannot be said that no rational trier of fact could have found Blackwell guilty beyond a reasonable doubt.
 
 VII.
 
 31
 On September 28, 1992, Blackwell's counsel, Mike O'Shea, filed a motion to withdraw based upon his acrimonious relationship with Blackwell. Blackwell asserts that this is evidence of the fact that he received ineffective assistance of counsel in violation of the Sixth Amendment. In addition, Blackwell charges that O'Shea failed to adequately investigate his case. Blackwell asserts that witnesses were available to corroborate his testimony that he was in Cleveland pursuing employment on the dates when Rox asserted he was delivering drugs. Under Sims v. Livesay, 970 F.2d 1575, 1580 (6th Cir.1992), O'Shea had an affirmative duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." If such investigation was not conducted, a claim for ineffective assistance will lie.
 
 
 32
 However, Blackwell did not raise this claim in the trial court. We will not generally entertain a claim of ineffective assistance of counsel if it is raised for the first time on appeal. United States v. Straughter, 950 F.2d 1223, 1234 (6th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992); United States v. Martin, 920 F.2d 345, 349 (6th Cir.1990), cert. denied, 111 S.Ct. 2038 (1991). An exception to this general rule will be made when the record is adequate to review an ineffective assistance claim, United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990), however, this exception does not apply in the present case.
 
 
 33
 Due to the absence of an adequate record, a more appropriate forum for Blackwell to raise his claim is the district court, in a post-conviction proceeding brought under 28 U.S.C. Sec. 2255.
 
 VIII.
 
 34
 Blackwell's final claim is that the sentencing court erred in failing to grant a two-level reduction for minor participation. In United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993) (quoting United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 498 U.S. 1002 (1990)), we found that "[t]he district court's determination as to role in an offense is a finding that is 'heavily dependent on the facts,' and the defendant has the burden of proving such mitigating factors by a preponderance of the evidence."
 
 
 35
 In this case the trial court was presented with ample evidence that Blackwell delivered the drugs to Rox each time and picked up the money several times. Blackwell has presented no evidence in mitigation of these facts other than his assertion that "[t]he other members connected with the conspiracy were major players compared to Appellant Blackwell." Blackwell Br. at 20. This is not sufficient to satisfy his burden. The district court's determination that a two point reduction should not be applied was not clearly erroneous, and will therefore be affirmed.
 
 IX.
 
 36
 For the foregoing reasons, we AFFIRM both the convictions and the sentences.
 
 
 
 *
 The Honorable David W. McKeague, District Judge for the Western District of Michigan, sitting by designation