NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4300
_____

UNITED STATES OF AMERICA

v.

PROMISE MEBRTATU,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cr-00204-02)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 7, 2013

Before: FUENTES, GREENBERG, and BARRY, *Circuit Judges*.

(Opinion Filed: October 30, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Promise Mebrtatu appeals from the District Court's final judgment of conviction

and sentence and requests a new trial. Mebrtatu raises two issues on appeal: (1) whether

the District Court properly denied Mebrtatu's motion to suppress physical evidence

obtained during a vehicle search, and (2) whether the District Court properly denied Mebrtatu's motion in limine to exclude text messages retrieved from a cellular phone found on her person. For the reasons that follow, we affirm the District Court's denial of Mebrtatu's motion to suppress and motion in limine.

## I.      Factual and Procedural Background

On March 31, 2011, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Promise Mebrtatu and three other individuals with participating in a conspiracy to commit bank fraud and aggravated identity theft and with substantive acts of bank fraud and aggravated identity theft. Before trial, Mebrtatu, along with co-defendants Markcus Goode and Milan Douglas, filed a motion to suppress physical evidence recovered during Vermont state troopers' search of the rental car in which they were traveling.

Co-defendant Goode's niece, Charmaine Mitchell, rented the car in question from Dollar Rental Car, and Goode was driving the car when it was stopped and searched. Mebrtatu, along with Milan Douglas and Jessica Randolph, were passengers in the car at the time. Neither Goode's name nor any of the passengers' names were listed on the rental agreement. Mitchell was the only authorized driver of the rental car.

On December 1, 2011, the District Court held a hearing on the motion to suppress. During the suppression hearing, Vermont State Trooper Christopher Lora, the primary law enforcement officer involved in the vehicle stop, testified about the stop and the ensuing events. The District Court subsequently denied the motion to suppress in a written opinion. In pertinent part, the Court held that "Defendants all lack standing to

2

challenge the search of this rental car because none of them was listed on the rental agreement as an authorized driver." App. 10. Additionally, the District Court held that the car search followed Goode's voluntarily and freely given consent and that there was probable cause to conduct the search.

Mebrtatu and her co-defendants subsequently filed a motion in limine to exclude several exhibits, including the LM GM730 cellular phone recovered from Mebrtatu during her arrest and the text messages found on that phone. During trial, the District Court concluded that the government met its burden of authentication. Accordingly, the District Court denied Mebrtatu's motion in limine to exclude the seized cellular phone and the text messages associated with the three phone numbers found on the device.

After hearing the evidence at trial, a jury convicted Mebrtatu of some, but not all, of the 38 counts in the indictment. On November 5, 2012, the District Court sentenced Mebrtatu to a total of 78 months imprisonment. Mebrtatu timely filed this notice of appeal.[1]

## II.    Analysis

### A.    Motion to Suppress

On appeal, Mebrtatu argues that the District Court erred in denying her motion to suppress evidence seized during the rental car search. Mebrtatu asserts that the traffic

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). A District Court's ruling on the authentication of evidence is reviewed for abuse of discretion. *See United States v. Reilly*, 33 F.3d 1396, 1403 (3d Cir. 1994).

stop that resulted in this vehicle search was unduly prolonged and constituted an unlawful detention. We disagree with Mebrtatu's contention. A traffic stop "ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Moreover, an officer is permitted to ask questions even if they are unrelated to the purposes of the stop. *See id.* ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Because Mebrtatu has not presented evidence demonstrating that Trooper Lora unduly prolonged the stop, we hold that the stop did not constitute an unlawful detention.

Additionally, the District Court correctly concluded that Mebrtatu and her co-defendants lack standing to challenge the search of the rental car because they were not listed on the rental agreement as authorized drivers. "Standing to challenge a search requires that the individual challenging the search have a reasonable expectation of privacy in the property searched." *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). As we held in *United States v. Kennedy*, "the driver of a rental car who has been lent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy." 638 F.3d 159, 165 (3d Cir. 2011).

Mebrtatu argues that this case is distinguishable from *Kennedy*. In *Kennedy*, we concluded that the defendant, who was not listed on the rental agreement, lacked standing

4

to challenge the search of a vehicle rented by his girlfriend. *Id.* at 168. According to Mebrtatu, the instant case presents extraordinary circumstances giving rise to a legitimate expectation of privacy because Goode specifically asked Mitchell to rent the car on his behalf and for his use. We disagree. This case raises the identical issue presented in *Kennedy*, namely "whether someone who has been given permission to drive a vehicle by its renter, without the knowledge of its owner and in contravention of the rental agreement, nevertheless has standing to challenge a search of that vehicle." *Id.* at 165. As in *Kennedy*, "[a]lthough [the driver] had the permission of the renter to operate the vehicle, *he did not have the permission of the owner*. . . . [A]ny expectation of privacy he subjectively held in the vehicle was therefore objectively unreasonable." *Id.* at 168 (emphasis added). Because Dollar Rental Car only authorized Mitchell to drive the car, none of the defendants, including Mebrtatu, had standing to challenge the search of the car. Accordingly, we affirm the District Court's denial of the motion to suppress.

### B. Motion In Limine

On appeal, Mebrtatu argues that the District Court erred in denying her motion in limine to exclude text messages found on the seized cellular phone. In particular, Mebrtatu asserts that the government did not have sufficient evidence to authenticate the messages and attribute them to her.

We affirm the District Court's denial of Mebrtatu's motion in limine. Rule 901 of the Federal Rules of Evidence governs the requirements for authenticating evidence. Pursuant to Rule 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding

that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides a non-exhaustive list of examples of appropriate methods for authenticating evidence. These include: "[t]estimony that an item is what it is claimed to be" and "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4).

The government's "burden of proof for authentication is slight. All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *United States v. Reilly*, 33 F.3d at 1425 (citation and internal quotation marks omitted). As we previously explained:

> [T]here need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*Id.* at 1404 (quoting *United States v. McGlory*, 968 F.2d 309, 328-29 (3d Cir. 1992)).

The government has presented substantial evidence from which a jury could infer that the text messages in question were authentic and attributable to Mebrtatu. First, as Trooper Lora testified at trial, the device containing these text messages was found on Mebrtatu's person. *C.f. United States v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013) (holding that foreign bank documents found inside a person's home were properly authenticated); *United States v. McGlory*, 968 F.2d at 329 (holding that notes found in the trash outside the defendant's residence were properly authenticated).

6

Second, the content of the text messages indicates that Mebrtatu was the user of the seized phone and hence the sender and receiver of the messages found on that phone. *C.f. Turner*, 718 F.3d at 233 (holding that the documents' contents supported a finding of authenticity, since these documents were addressed to the defendant's co-conspirator and several were responsive to the co-conspirator's faxes). Numerous text messages received by each of the three numbers associated with the phone were sent to "Promise." Moreover, in one of the text messages sent from that phone, the sender identified herself as "Promise." Another indicator that Mebrtatu used the phone in question is that several text messages sent and received by each of the three phone numbers referred to "markcus," and text messages stated "I love you Markcus." App. 28, 43. The content of these messages, taken together with the fact that Markcus Goode identified Promise as his girlfriend of eight months, provides evidence of their authenticity. Finally, the government correctly notes that the phone contained other text messages whose content, when considered in conjunction with Jessica Randolph's testimony, supports a finding of authenticity.

In sum, the government produced sufficient evidence to satisfy its slight burden of proof for authentication. Therefore, we conclude that the District Court did not abuse its discretion in ruling that the text messages were properly authenticated.

## III.

For the foregoing reasons, we affirm the District Court's denial of Mebrtatu's motion to suppress and motion in limine.

7