**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy FULTS, Defendant–Appellant.**

No. 14–5654.

United States Court of Appeals,
Sixth Circuit.

March 30, 2016.

BEFORE: BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

## OPINION

BERNICE BOUIE DONALD, Circuit Judge.

A federal jury convicted Timothy Fults of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pursuant to 18 U.S.C. § 924(e)(1), the district court sentenced him, as an armed career criminal, to a term of 235 months. On appeal, Fults challenges the calculation of his sentence, and also contends that the district court made two reversible evidentiary errors.

For the reasons set forth below, we **AFFIRM** Timothy Fults' conviction but **REMAND** the case to the district court for re-calculation of his sentence.

## I.

On November 19, 2012, Jody Cavanaugh ("Cavanaugh"), a Sheriff's Department Investigator for Warren County, Tennessee, received a text message from a confidential informant, Dane Briest ("Briest") stating that Briest had "set up a deal with [Timothy] Fults to purchase a Taurus .357 revolver." (Appellant Br. 4.) According to Briest, he received a text message from Timothy Fults ("Fults") that read, "Do you know anybody needing a gun." (Page ID #261.) With Cavanaugh's direction, Briest negotiated the terms of the firearm purchase with Fults via text message. (Page ID #261–62.) Briest instructed Fults to come by his apartment to consummate the purchase, an apartment that Briest shared with his mother and his girl-

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

friend, Connie Moulton ("Moulton"). (Appellant Br. 4.)

Shortly thereafter, Cavanaugh and a fellow officer picked up Briest and took him to the parking lot of a local middle school to "search, wire, and prep" him. (Page ID # 189.) Briest was fitted with a digital recording device, which was placed underneath his clothes. (Appellee Br. 4). He was also provided with $250.00 so that he could purchase the firearm from Fults. (Page ID # 191.)

After meeting up with the officers, Briest returned to his apartment. (Page ID # 191.) A short time later, Fults and his girlfriend, Heather Polson ("Polson"), arrived. (Page ID # 191.) The firearm sale took place in the living room. (Page ID # 264.) Present in the room were Fults, Polson, Briest, and Moulton. Before finalizing the purchase, Briest asked Fults whether the gun was stolen. (Page ID # 263.) Fults assured him the gun was not stolen. (Page ID # 263–64.) Presumably to legitimize the transaction, Polson provided Briest with a bill of sale. (Page ID # 264.) The bill of sale read, "I, Heat[h]er Polson, sell a .357 revolver Taurus Magnum to _____." (Page ID # 379.) Although Fults accepted the money and handed Briest the gun, he refused to sign the bill of sale. (Page ID # 263.)

After the sale was complete, Briest and Moulton left his apartment to meet up with Cavanaugh and couple of his fellow officers. (Page ID # 266.) Briest handed over the gun and the bill of sale to the officers. (Page ID # 268.) The next day, Briest signed a standard confidential informant contract and provided a written statement. (Page ID # 188.) On May 29, 2013, the grand jury indicted Fults of knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Page ID # 1–2.)

Fults' trial was brief. It commenced on January 14, 2014, and concluded on January 15, 2014. (Page ID # 72.) In its case in chief, the government put on three witnesses: (1) Cavanaugh, (2) Briest, and (3) Moulton. (Appellee Br. 2.) Fults presented two witnesses: (1) Polson, and (2) Joe Chandler, one of Fults' former probation officers. (Appellee Br. 9.) The jury found Fults guilty of being a felon in possession of a firearm.

The Presentence Investigation Report (PSR) classified Fults as an armed career criminal under 18 U.S.C. § 924(e)(1) based on a prior aggravated robbery conviction and five aggravated burglary convictions under Tenn.Code Ann. § 39–14–403. (Page ID # 111.) The district court sentenced him to a within-the-guidelines sentence of 235 months of imprisonment. (Page ID # 152.) This timely appeal followed.

## II. TRANSCRIPT ADMISSION ERROR

Fults contends that the district court reversibly erred when it admitted the transcript of the audio recording of the firearm purchase. (*See* Appellant Br. 23–31) For the reasons detailed below, we hold that the transcript was properly admitted and that, even if the district court erred in admitting the transcript, the error was harmless.

### A. FACTS

With the aid of a recording device located on Briest's person, Cavanaugh was able to record the transaction in its entirety. (Page ID # 199.) Sometime after the firearm purchase, Cavanaugh reviewed the audiotape and assisted in reducing its pertinent portion to a typed transcript. (Page ID # 200.)

At trial, Cavanaugh testified that he was able to verify all the voices on the transcript, and also affirmed that it was a true and accurate depiction of "what's contained on the audio recording of the controlled buy." (Page ID # 201.) The district court admitted the audio recording into evidence and, at that time, the transcript was accepted only as a demonstrative aid. (Page ID # 201–02.) Prior to doing this, however, the district court asked Fults' counsel if she had been provided a copy of the transcript to compare to the audio recording. (Page ID # 201.) She confirmed that she had. (Page ID # 201.) At that time, Fults did not object to the transcript being admitted as a demonstrative aid. (*See* Page ID # 201.)

The district court then instructed the jury as follows:

Okay. All right. Ladies and gentlemen, here's what's going to happen now, and you may recall, this came up in voir dire. In just a moment, you're going to be played an audio recording, that's Government's Exhibit No. 4, that I have introduced into evidence. That is evidence. As you've heard Investigator Cavanaugh testify to, the government has prepared a transcript of what the government contends, you know, is heard on the audio that you're going to listen to. The defense has had a chance to look at the transcript. It's not the defense's transcript. I'm going to let you see the transcript to follow along with the audio. I haven't heard this audio myself, typically, or often times these audios are very poor quality.

I'm going to instruct you that the audio itself is evidence, the transcript is not evidence. This may put you in the position—I'm going to instruct you that it is your duty to listen carefully to the audio as you're looking at the transcript and to believe your ears before your eyes, if your eyes and ears tell you the same thing, then, that's fine. That's up to you. However, if you hear something different on the audio than you believe is on the transcript, you are to believe your ears rather than your eyes. This will probably be the most difficult job that you have to do in the course of the trial. I mean, we ask jurors to do this often times, but that's—the audio itself is the evidence. The transcript is not evidence. It will not go back to the jury room. And you, I instruct you that you're free to disregard the transcript if what you hear is different from what you read on the transcript.

(Page ID # 201–02.)

After the district court's instruction, the tape was played in open court. (Page ID # 208.) While the tape was playing, Cavanaugh identified the speakers. (Page ID # 208–14.)

The audiotape was played and the transcripts were distributed to the jury again during Briest's examination. (Page ID # 270–71.) At the conclusion of Briest's examination, the government moved to admit the transcript into evidence. (Page ID # 326–27.) Over Fults' counsel's objection, the district court admitted the transcript into evidence. (Page Id # 330.) In making its ruling, the district court noted that Fults' counsel previously affirmed that the transcript was a true and correct summary of what was said on the audiotape. (Page ID # 330.) Since the admission conflicted with the district court's prior ruling and jury instruction that the transcript *was not* evidence, the court instructed the jury as follows,

As you know when I sent you out previously I had told you that in the case of a tape recording, the tape recording itself was evidence, the transcript was not evidence, and, therefore, when you go back to the jury room

you'll have access to the audio recording but not the transcript. That has, that has now changed due to some evidentiary, you know, sort of technical, evidentiary, legal, evidentiary issues that have come up in this particular case. I have now, while you were out, introduced the transcript itself into evidence. And so, that will go back to the jury room with you.

Now, having said that, I'll say what I said before. If you detect a discrepancy in what you hear on the audiotape and the transcript, you're to believe your ears and not your eyes. However, you know, the transcript itself has now been introduced into evidence and it will go back to the jury room with you. And that's what he's asking Ms. Capetz to pass up to Ms. Moulton right now.

(Page ID # 342.)

## B. ANALYSIS

We typically review a district court's ruling allowing the jury to use a transcript as an aid for abuse of discretion. *United States v. Jacob*, 377 F.3d 573, 581 (6th Cir.2004) (citing *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir.1983)). To successfully challenge a district court's decision, defendants must show both error and prejudice. *United States v. Adams*, 722 F.3d 788, 823 (6th Cir.2013) (citation omitted). The admission of written transcripts of recorded conversations is not prejudicial error unless an inaccuracy exists in the transcript. *United States v. King*, 272 F.3d 366, 372 (6th Cir.2001) (citations omitted).

The government contends that since Fults' counsel did not object to the use of the transcript as an aid, we should review for plain error. (Appellee Br. 17.) This case presents an interesting quandary. While it is true that Fults' trial counsel did not object to the use of the transcript as an exhibit, she did object to it being used as evidence. (Page ID # 330.) Interestingly, we also review the decision to admit a transcript into evidence for abuse of discretion. *See United States v. Gallagher*, 57 Fed.Appx. 622, 625 (6th Cir.2003) ("The decision to admit into evidence the transcript of taped recordings is within the discretion of the court ..."); *see also United States v. West*, 948 F.2d 1042, 1044 (6th Cir.1991). Thus, it appears that we have chosen not to differentiate the standard of review for admitting transcripts as aids from admitting them as evidence.

■ Although the distinction may seem inconsequential, from the perspective of the non-admitting party admitting a transcript into evidence is distinguishable from the court allowing it to be used as a demonstrative aid. If a district court solely allows a transcript to be used as a demonstrative aid, it may not be consulted by the jury during deliberations. *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 705 (7th Cir.2013) ("[M]aterials not admitted into evidence simply should not be sent to the jury for use in its deliberations.") (citation omitted); *see also United States v. Bray*, 139 F.3d 1104, 1111–12 (6th Cir.1998) (discussing when and why illustrative aids are admitted into evidence). On the other hand, if a demonstrative aid is admitted into evidence as an exhibit, the jury may use it during deliberations. Therefore, in light of the prejudicial concerns that are presented when admitting demonstrative aids into evidence, we find that Fults' counsel's objection to the admission of the transcript as evidence was sufficient to preserve this issue for appeal. Accordingly, we will review the admission of the transcript into evidence for abuse of discretion.

At the outset, we note that Fults has not challenged the admission of the audiotape. Instead, he only challenges the admission

of the transcript. (*See* Appellant Br. 23.) Thus, Fults does not contend that the tape is inaudible or not comprehensible. *See, e.g., United States v. Scarborough,* 43 F.3d 1021, 1024 (6th Cir.1994) (analyzing challenges to both the admission of an audio recording and the admission of the transcript of the audio recording). Therefore, our review will solely concern whether the district court abused its discretion by admitting the transcript as evidence.

In *United States v. Robinson,* 707 F.2d 872, 878 (6th Cir.1983), we stated our preference for district courts to secure a stipulation to the transcript's accuracy prior to publishing it to the jury. In the absence of a stipulation, we held that "the transcriber should verify that he or she has listened to the tape and accurately transcribed its content." *Id.* at 878–79. In addition to the transcriber's verification, a district court should "also make an independent determination of accuracy by reading the transcript against the tape." *Id.* at 879. If there are inaudible portions of the tape that do not render the entire tape untrustworthy, then "the court should direct the deletion of the unreliable portion of the transcript." *Id.*

 In this case, Fults' trial counsel never questioned the authenticity of the tape. When the government asked the district court's permission to hand the transcript to the jury, the court asked Fults' counsel whether she was provided with an opportunity to review the transcript. (Page ID # 201.) She responded affirmatively. (Page ID # 201.) Next, the court asked counsel if she "had an opportunity to compare it to the recording." (Page ID # 201.) She said that she had. (Page ID # 201.) Although the district court failed to ask the natural follow-up question—"do you stipulate to the accuracy of the transcript"—it was sufficient that

the court provided her an opportunity to raise an objection and she failed to do so.

Turning to the second alternative, it does not appear that the transcriber of the transcript testified to its accuracy, or that the district court conducted an in camera review of the transcript prior to submitting it to the jury. However, the procedures adopted in *Robinson* "were not compulsory, or all-inclusive." *See United States v. Blackwell,* 16 F.3d 1221, 1994 WL 6809, at *4 (6th Cir.1994) (per curiam) ("The [*Robinson*] court's primary focus was not with the adoption of specific and mandatory procedures, but was instead motivated by the need for 'basic safeguards to ensure reliability.' ").

Sufficient safeguards were present in this case. Specifically, Cavanaugh verified the accuracy of the transcript and he also testified that he assisted in its making. (Page ID # 200.) Moreover, although the transcript was admitted into evidence, the district court still instructed the jury as follows:

> Now, having said that, I'll say what I said before. If you detect a discrepancy in what you hear on the audiotape and the transcript, you're to believe your ears and not your eyes. However, you know, the transcript itself has now been introduced into evidence and it will go back to the jury room with you. And that's what he's asking Ms. Capetz to pass up to Ms. Moulton right now.

(Page ID # 342.)

In light of Cavanaugh's testimony and the district court's instruction, we hold that the district court did not abuse its discretion in admitting the transcript because the safeguards employed by the court were sufficient to ensure the transcript's reliability.

Moreover, Fults was not prejudiced by the admission of the transcript. The ad-

mission of a written transcript is not prejudicial error unless an inaccuracy exists in the transcript. *King,* 272 F.3d at 372. In his brief, Fults does not argue that the transcript is inaccurate—i.e. the transcript does not reflect the conversation on the audio tape. Instead, he argues that the district court failed to follow the "basic safeguards to ensure reliability." (Appellant Br. 25.) To support his argument, Fults relies on many of the district court's statements made during trial. For example, before playing the recording for a second time the court said that, "you can't tell what's going on with the tape anyway." (Appellant Br. 26.) Fults' reliance on the district court's statements is misplaced because he does not allege that the transcript is inaccurate. The district court's statements would be relevant if he alleged that the district court erred in admitting the audio tape. As stated above, Fults does not challenge the admission of the tape. Even if the parties did not stipulate to the accuracy of the transcript, or if the safeguards employed by the court were insufficient, we would not reverse because Fults has not shown that he was prejudiced by the admission of the transcript as an aid or its admission as evidence. *See Scarborough,* 43 F.3d at 1025. ("Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant has shown no prejudice.").

▮ Lastly, we also conclude that even if the district court erred, the error was harmless. Under the "harmless error" rule, any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *United States v. Kilpatrick,* 798 F.3d 365, 378 (6th Cir.2015). In this case, three witnesses recounted the firearm purchase exactly as it was portrayed in the transcript. There-

fore, the government provided enough evidence, in the form of witness testimony, to convict Fults without the use of the transcript.

## III. ALLEGED TEXT MESSAGE AUTHENTICATION ERROR

Fults alleges that there was insufficient foundation to admit Briest's testimony about a text message allegedly sent by Fults. For the reasons described below, we disagree.

### A. FACTS

During Briest's direct examination, he testified that he received a text message from Fults. (Page ID # 255–56.) Once the government asked Briest to state the exact message that Fults sent him, Fults' counsel objected, arguing that the text message was inadmissible hearsay. (Page ID # 257.) The court instructed the prosecutor to lay some foundation about "how he knew that the text was from Mr. Fults." (Page ID # 257.) Immediately following the district court's directive, the following exchange occurred:

**Prosecutor:** You testified you received a text from Mr. Fults. How did you know that that text was from Mr. Fults?

**Briest:** I had him under my contacts. I spoke with him on numerous occasions from this number. We had been in contact over many, many times through that number and spoke, just, you know, if we weren't speaking, we were texting. And, you know, I knew that it was coming from him.

**Prosecutor:** Are you—

**Fults' counsel:** I'm still going to object because I don't think that that provides adequate foundation just by simply saying that he received, he had communication with Mr. Fults on that particular phone does not in and of itself establish

that the text received by him from that phone on these dates were from Mr. Fults.

(Page ID # 258.)

After some back and forth from the court and Fults' counsel, the court overruled the objection. (Page ID # 260.) In overruling the objection, the district court reasoned,

> I think there has been sufficient foundation laid here. I mean, Mr. Briest is testifying that he received a text from who, from some, from a source that he believed to be, he believed to be Mr. Fults.

(Page ID # 260.)

After the district court's ruling, Briest testified that the text message said, "Do you know anybody needing a gun." (Page ID # 261.)

## B. ANALYSIS

We review authenticity decisions for abuse of discretion. *United States v. Jones,* 107 F.3d 1147, 1149 (6th Cir.1997). Under Federal Rule of Evidence 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* at 1150. "Determination whether evidence is authentic is governed by Rule 104(b) of the Federal Rules of Evidence." *United States v. Kilpatrick,* No. 10–20403, 2012 WL 3236727, at *3 (E.D.Mich. Aug. 7, 2012). "The district court must first determine whether the proponent of the evidence has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* (internal quotation marks omitted). "Because authentication is essentially a question of conditional relevancy, the jury will ultimately resolve whether the evidence ad-

mitted for its consideration is what the proponent claims." *Id.* (quotation marks omitted). "Thus, a party seeking to admit an exhibit need only make a *prima facie* showing that it is what the proponent claims it to be." *Id.* (citing Fed.R.Evid. 901(a)).

In *Kilpatrick,* the district court decided that text messages sent by the defendant were properly authenticated based on the distinctive features of many of the text messages. *Id.* at *4–6. For example, the court pointed to the defendant's personalized signature at the bottom of his text messages and how all of his text messages had a similar language pattern. *Id.*

██ In this case, because only one text message is in dispute, the distinctive characteristics of the text messages in *Kilpatrick* are not present. Briest did, however, state that he communicated with Fults using that number on multiple occasions. (Page ID # 258.) Additionally, the text message content was corroborated by the fact that Fults showed up at Briest's apartment shortly after sending the text message. Accordingly, we find that the admission of the text message was not an abuse of the district court's discretion because the government presented sufficient evidence from which a jury could infer that the text message was authentic and attributable to Fults. *See United States v. Mebrtatu,* 543 Fed.Appx. 137, 140 (3d Cir. 2013).

██ We also find that even if the district court erred by the admitting the text message, the error was harmless. *See Kilpatrick,* 798 F.3d at 378. Outside of the text message, the government presented enough other evidence to convict Fults, namely the three witnesses who all testified against Fults.

## IV. ALLEGED SENTENCING ERROR

Fults argues that that the district court improperly calculated his sentence. Specifically, he alleges that the district court improperly used his five aggravated burglary convictions to classify him as an armed career criminal. We agree.

### A. FACTS

Based on his Tennessee aggravated robbery conviction and five Tennessee aggravated burglary convictions, the PSR deemed Fults to be an armed career criminal with a minimum sentence of fifteen years of imprisonment (Page ID ## 123, 128.) Based upon Fults' total offense level of thirty-three and a criminal history of category five, his guideline recommended range was 210–262 months of imprisonment. (Page ID # 128.) Ultimately, the district court decided that Fults' aggravated burglary convictions were predicate offenses for purposes of the armed career criminal statute. The court reasoned,

> I'm going to respectfully overrule your objection and find that these five burglary, five burglary convictions do qualify as predicate offenses for purposes of the armed career criminal statute. And the reason I do that is because I think that I'm foreclosed, as I understand the current Sixth Circuit case law, by decisions such as *Brown* and, particularly, *Ghoston*, I mean, you know, that does say that the Tennessee burglary statute, generic statute, which I am equating with the categorical approach. I do understand your argument, Ms. Maio, but, I guess, my ruling today is a long way of saying, I am assuming, without knowing because it's not made explicit, that the Sixth Circuit considered those, you know, arguments that you made when they decided *Ghoston.* So, at any rate.

That may be a faulty assumption, but at any rate.

(Page ID # 486.)

The district court sentenced Fults, as an armed career criminal, to a term of 235 months of imprisonment and five years of supervised release. (Page ID # 152.)

### B. ANALYSIS

"We review *de novo* the question whether a defendant's prior conviction is a violent felony under the ACCA." *United States v. Phillips,* 752 F.3d 1047, 1049 (6th Cir.2014) (citing *United States v. Stafford,* 721 F.3d 380, 395–96 (6th Cir.2013)).

The Armed Career Criminal Act ("ACCA") increases the sentences of defendants who have been convicted of three or more violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The district court determined that Fults' five aggravated burglary convictions constituted violent felonies. The ACCA defines a violent felony as follows,

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e)(2)(B).

As written, the statute identifies three types of convictions that meet its definition of a violent felony: (1) a felony that has an element "use, attempted use, or threat-

ened use of physical force against the person of another," (2) a felony conviction for burglary, arson, extortion, or one that involves the use of explosives, or (3) a felony that presents a serious potential risk of physical injury to another (often called the residual clause). *Id.*

*Brown* and *Ghoston* were affirmed based on 18 U.S.C. § 924(e)(1)'s residual clause. *See United States v. Brown,* 516 Fed.Appx. 461, 465 (6th Cir.2013) ("Thus, Brown's burglary conviction qualifies under the residual clause as a violent felony for purposes of punishment enhancement."); *United States v. Ghoston,* 530 Fed.Appx. 468, 469–70 (6th Cir.2013) (holding that a Tennessee attempted aggravated burglary conviction qualified as a violent felony under the residual clause). However, the district court purported to rely upon those cases because, as it reasoned, *Brown* and *Ghoston* decided that the Tennessee burglary statute was a generic burglary statute. (Page ID # 152.) Notwithstanding the fact the district court may have been mistaken, or simply did not say what it intended to, since it expressly relied on cases affirming armed career criminal determinations based upon the residual clause, we will conduct our review as if the district court sentenced him as an armed career criminal under the residual clause.

At the time of Fults' sentencing, the residual clause was still good law. However, in *Johnson v. United States,* ——, U.S. ——, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015), the Supreme Court held that the residual clause "violates the Constitution's guarantee of due process." Moreover, we have previously relied on *Johnson* to invalidate armed career criminal enhancements based on the residual clause. *See United States v. Bell,* 612 Fed.Appx. 378, 379 (6th Cir.2015) (per curiam) ("In light of *Johnson's* holding that the residual clause is unconstitutionally vague, Bell's aggravated assault conviction no longer qualifies as a violent felony."). Accordingly, since the district court sentenced Fults as an armed career criminal using the residual clause, we must remand this case to the district court for resentencing.

## V. CONCLUSION

For the reasons detailed above, we **AFFIRM** Fults' conviction, but **REMAND** the case to the district court for resentencing.